# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/03/2024** at 11:36:01 AM
Clerk of the Superior Court
By Jonathan Renteria, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| LAURA WILLIS ALBRIGO, on behalf of herself, all others similarly situated, and the general public,<br><br>       Plaintiff,<br><br>   v.<br><br>CHOBANI, LLC<br>       Defendant. | Case No: 37-2024-00031263-CU-NP-CTL<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*; CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*; AND UNJUST ENRICHMENT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Laura Willis Albrigo, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, brings this action against Chobani, LLC ("Chobani" or "Defendant"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1.      Chobani sells a line of zero-sugar yogurts called Chobani Zero Sugar that it represents is made with "Only Natural Ingredients" (the "Yogurts").[1] These are sold as multipacks and in individual yogurt cups.

2.      Plaintiff and other consumers purchased the Yogurts believing they were made with only natural ingredients. Chobani's "Only Natural Ingredients" claim, however, is false and misleading because the Yogurts contain artificial, synthetic ingredients, including stevia leaf extract, monk fruit extract and—in all varieties except vanilla and toasted coconut vanilla—additional ingredients as coloring agents. Moreover, for a substantial part of the last four years, the Yogurts also contained manufactured citric acid.

3.      Plaintiff brings this action on behalf of herself, similarly-situated Class Members, and the general public, to recover compensation for injured Class Members.

## JURISDICTION & VENUE

4.      The California Superior Court has jurisdiction over this matter as a result of defendant's violations of the California Business and Professions Codes and California common law principles.

5.      This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution, because this case is not a cause given by statute to other trial courts.

---

[1] During the relevant time period, the Yogurts were sold in the following flavors or varieties: Vanilla, Strawberry, Toasted Coconut Vanilla, Mixed Berry, Strawberry Cheesecake, Blueberry, Milk & Cookies, Key Lime Pie, Peach, Black Cherry, Raspberry, Rainbow Sherbet, and Lemon Meringue Pie. To the extent any additional flavors were sold during the Class Period, the complaint should be read to include rather than exclude such flavors.

6.     The aggregate restitution sought herein exceeds the minimum jurisdictional limits for the Superior Court and will be established at trial, according to proof.

7.     The California Superior Court also has jurisdiction in this matter because there is no federal question at issue, as the issues herein are based solely on California statutes and law.

8.     The Court has personal jurisdiction over Chobani as a result of its substantial, continuous and systematic contacts with the State, and because Chobani has purposely availed itself of the benefits and privileges of conducting business activities within the State, including by marketing, distributing, and selling the Yogurts in California.

9.     Venue is proper in San Diego County because a substantial part of the events or omissions giving rise to the class claims occurred in San Diego County.

## PARTIES

10.     Plaintiff Laura Willis Albrigo presently resides and intends to continue to reside in San Diego County, California. Accordingly, she is a citizen of the State of California.

11.     Defendant Chobani, Inc., is incorporated in Delaware and has its principal place of business in New York.

## FACTS

I.     **CHOBANI FALSELY ADVERTISES THE YOGURTS AS MADE WITH "ONLY NATURAL INGREDIENTS"**

12.     As Chobani knows, many consumers prefer and are willing to pay more for, and purchase more often foods made only with natural ingredients.

13.     During at least the four years preceding the filing of this Complaint and continuing today, Chobani has leveraged this preference by prominently labeling the Yogurts as being made with "Only Natural Ingredients." This is true of each variety of Yogurt complained of herein. Depictions of the packaging of a multipack and a single cup appear below, with the challenged labeling claim indicated.



14.    Reasonable consumers, including Plaintiff, interpret "Only Natural Ingredients" to mean the Yogurts are not made with, and do not contain, any artificial or synthetic ingredients.

15.    However, contrary to the label claim, the Yogurts are made with stevia leaf extract, monk fruit extract and—in all varieties except vanilla and toasted coconut vanilla—additional ingredients as coloring agents. Moreover, until recently, the Yogurts also contained manufactured citric acid. Below are exemplars of the current ingredient list for the Mixed

3

Berry flavor, and the ingredient list for Mixed Berry when it was manufactured with citric acid.

## Ingredients

Ultra-filtered nonfat milk**, water, skim milk†, allulose†, contains 2% or less of: tapioca flour, natural flavors, citrus fiber, vegetable juice concentrate (for color)†, sea salt, guar gum, stevia leaf extract (reb m), monk fruit extract, cultures. **Ingredient not found in regular yogurt. †Includes a dietarily insignificant amount of sugar.

**Ingredients:** Ultra-filtered nonfat milk**, water, skim milk†, allulose†, contains 2% or less of: natural flavors, tapioca flour, citrus fiber, vegetable juice concentrate (for color)†, guar gum, sea salt, stevia leaf extract (reb m), monk fruit extract, citric acid, cultures. **Ingredient not found in regular yogurt. †Includes a dietarily insignificant amount of sugar.

**6 live and active cultures:**
S. Thermophilus, L. Bulgaricus,
L. Acidophilus, Bifidus,
L. Casei, and L. Rhamnosus.

### A.    Stevia Leaf Extract is an Artificial Ingredient

16.    To make Stevia Leaf Extract, dried stevia leaves are steeped in hot water to extract glycosides, the sweet-tasting parts of the leaf. The water is then filtered so the remaining material can be isolated and purified. The process, and processing aids, produce a crystalized sweet extract of the leaf.

17.    The industrial process of extracting steviol glycoside from the stevia plant begins with extraction with hot water. Dry leaves are loaded into a trough, like the one depicted below, hot water from a boiler is added, and leaves are extracted with hot water by thorough mixing. The water extract is then discharged into a holding tank.





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18.    The liquid extract is then clarified by either chemical- or electro-coagulation and filtering in an industrial tank like the one depicted below.





6



19. The water extract from the electro-coagulation stage is then filtered by an industrial filter press, like the one depicted below, to remove coagulated contaminants.





20.    Next, the filtered water extract is clarified through (i) an activated carbon filter, (ii) a cation exchange column, then (iii) an anion exchange column. The equipment and processes are depicted below.





21.    Next, the clarified water extract is passed through a special macro-porous non-ionic resin column, during which time the steviol glycoside in the water gets adsorbed on the resin surface, which becomes saturated with steviol glycoside.



9

22.    As depicted below, a water-immiscible solvent, such as pure ethanol, is then passed through the column. The solvent takes up the steviol glycoside from resin.





10

23.    The resulting alcoholic solution of steviol glycoside is then concentrated with a nanofiltration membrane device, as depicted below.





11

24. The resulting mixture is then further purified through a series of industrial processes depicted below.





*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

25.    A byproduct of this process, alcoholic TSG syrup, is then decolorized, using the equipment and process depicted below.



13

1    26.    Finally, hot, decolorized alcoholic TSG syrup is spray dried in industrial
2  equipment as depicted below.





14

1

**B.      Monk Fruit Extract is an Artificial Ingredients**

2

27.     Monk fruit is an herbaceous plant of the gourd family. The plant is cultivated for

3    its fruit extract, which creates a sweetness sensation 250 times stronger than sucrose. Monk

4    Fruit Extract is highly processed in order to get it from the whole small melon to the

5    concentrated powder or liquid used in foods.

6

28.     The first step in the production of Monk Fruit Extract is the harvesting and

7    extraction of the fruit. Mature fruits are harvested, sorted, washed, then crushed to extract the

8    juice, which is filtered to remove solid particles. The filtered juice is then heated to deactivate

9    its enzymes.

10

29.     Next, reverse osmosis is used to remove water molecules, leaving behind a more

11   concentrated juice, which is further purified through chromatography techniques such as ion-

12   exchange and size-exclusion chromatography. These processes separate compounds based on

13   their individual properties.

14

30.     Activated carbon and/or adsorption/separation polymer resin columns are then

15   used to further purify the concentrate by absorbing glycosides. The desired components are

16   then washed from the resin with ethanol, which is subsequently removed by evaporation. If

17   a powder is desired, the resulting liquid is then spray-dried to create the final powder product.

18

19

20

21

22

23

24

25                                   (this space intentionally left blank)

26

27

28

31.     A flow chart of the manufacturing process appears below.



**C.    Coloring Agents are Artificial Ingredient**

32.    The FDA has "a longstanding policy concerning the use of 'natural' in human food labeling" and "consider[s] the term 'natural' to mean that nothing artificial or synthetic (***including all color additives regardless of source***) has been included in, or has been added to, a food that would not normally be expected to be in that food."[2]

33.    FDA has been consistent that "[c]olor additives include both synthetic substances and substances derived from natural sources."[3]

34.    One of the reasons this longstanding policy exists is that "natural color," or similar terms containing "natural" are erroneously interpreted by reasonable consumers to mean the color is a naturally-occurring constituent in the food. However, "any ingredient added for color is not naturally occurring to the product,"[4] and thus, per FDA, "all natural" claims, when made on foods with ingredients added for color, are misleading.

35.    Relatedly, according to the USDA, for the foods it regulates, "natural" means: (1) the product does not contain any artificial flavor or flavoring, ***coloring ingredient***, or chemical preservative . . . or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed."[5] Notably, citric acid is a chemical preservative.

---

[2] *Use of the Term Natural on Food Labeling*, U.S. Food & Drug Administration, *at* https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling (emphasis added).

[3] *See* https://www.fda.gov/food/color-additives-information-consumers/color-additives-questions-and-answers-consumers ("Although exempt color additives are not subject to batch certification requirements, they are still color additives and FDA must approve them before they can be used in foods.").

[4] *See a Sip: A Basic Guide To Color Additives*, Flavorman (June 16, 2021), *available at* https://www.flavorman.com/media/see-a-sip-natural-and-artificial-colors.

[5] FDA Proposed Rule, "Use of the Term 'Natural' in the Labeling of Human Food Products; Request for Information and Comments," (Nov. 12, 2015) *available at* https://tinyurl.com/5ha5xfnr

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

36.    Each variety of Yogurt, with the exception of vanilla and toasted coconut vanilla, contain ingredients used to artificially color them.

37.    Because most of the Yogurts contain ingredients that artificially color them, the use of the term "Only Natural Ingredients" on those Yogurt varieties is false and misleading.

**D.    Manufactured Citric Acid is an Artificial Ingredient**

38.    Although at some point during the last four years Chobani ceased using it in the Yogurts, they used to contain manufactured citric acid ("MCA").

39.    While citric acid can be both a natural and a synthetic ingredient, depending on how it is sourced or produced, the citric acid utilized by Chobani in the Yogurts was industrially manufactured, and not the kind found in nature. That is, up until recently, each Yogurt contained MCA, an industrial chemical derived, not from fruit or vegetables, but from the fermentation of crude sugars (e.g., molasses and corn starch) by the mold, *Aspergillus niger*."

40.    The manufacturing process for food-grade citric acid, like in the Yogurts, utilizes synthetic industrial chemicals to render the ingredient from mold (*Aspergillus niger*), including n- octyl alcohol  and isoparaffinic petroleum hydrocarbons.  See 21 C.F.R. § 173.280(a) (describing the "[s]olvent extraction process for citric acid"). But while, with good manufacturing practices, "[r]esidues of n- octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are removed," some chemical residues will inevitably remain. *See id*. § 173.280(d) ("Current good manufacturing practice results in residues not exceeding 16 parts per million (ppm) n- octyl alcohol and 0.47 ppm synthetic isoparaffinic petroleum hydrocarbons in citric acid."). These trace synthetic chemical remain in the MCA and, as a result, end up in the finished Yogurts consumed by consumers, including Plaintiff.

41.    Because the large-scale production of processed, packaged foods requires a reliable and economical source of citric acid, virtually all commercial citric acid is produced synthetically through a fermentation process using *Aspergillus niger* mold, which ferments sugars to produce citric acid. This method is more cost-effective and efficient than extracting citric acid from citrus fruits.

42.    Manufactured citric acid, like that used in the Yogurts, is "a major industrial chemical, produced at >2 million t/year worldwide."[6] In industry and domestic applications, MCA is a chelating and buffering agent in many cleaning products and a starting material for synthesizing citrate esters, itaconic acid, acetonedicarboxylic acid, and other compounds."[7]

## II.    THE YOGURTS' LABELING VIOLATES CALIFORNIA LAW

43.    The Yogurts' labeling violates California Health and Safety Code § 110670, which states, "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."

44.    Under 21 U.S.C. § 343(a), any food is misbranded where its "label is false or misleading in any particular."

45.    The Yogurts' "Only Natural Ingredients" label claim is false or misleading in that the Yogurts contain artificial and synthetic ingredients.

## III.    PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

46.    As best as she can recall, Plaintiff Laura Willis Albrigo purchased the Yogurts in many varieties starting approximately three years ago. She would occasionally buy them from Ralph's and Vons supermarkets in San Diego, and she would also purchase them online through Amazon Fresh. She started purchasing from Amazon Fresh on or before June 26, 2023, and through that online service, for which she has digital confirmation, she purchased Black Cherry, Toasted Coconut, Peach, Blueberry, Key Lime Pie, Mixed Berry, and Strawberry Cheesecake. She may have purchased other flavors over the years from the brick-and-mortar Ralph's and Vons where she shops.

47.    When purchasing the Yogurts, Ms. Willis Albrigo was looking for foods that contain only natural ingredients. Whether the Yogurts she purchased were made with, and

---

[6] *Citric Acid*, ACS Chemistry for Life (April 4, 2022), *available at* https://www.acs.org/molecule-of-the-week/archive/c/citric-acid.html.

[7] *Id*.

contained only natural ingredients was material to her purchase decision because she considers such foods to be healthier alternatives than foods made with and containing artificial and synthetic ingredients. In purchasing the Yogurts, Ms. Willis Albrigo was exposed to, read, and relied on the label claim, "Only Natural Ingredients."

48.   The "Only Natural Ingredients" representation was and is deceptive because the Yogurts contain artificial and synthetic ingredients, as described herein.

49.   Ms. Willis Albrigo is a lay consumer, like other reasonable consumers, who did not have the specialized knowledge that Chobani had regarding the ingredients, or the nature of the ingredients, of the Yogurts. At the time of purchase, Ms. Willis Albrigo was unaware that the ingredients in the Chobani Yogurts were artificial or synthetic.

50.   Ms. Willis Albrigo acted reasonably in relying on the Yogurts' labels, which Chobani intentionally placed on the Yogurts with the intent to induce average consumers into believing they were made with only natural ingredients.

51.   Ms. Willis Albrigo paid more for the Yogurts and would not have purchased, or would not have been willing to pay as much for the Yogurts if she knew they contained artificial or synthetic ingredients.

52.   The Yogurts cost more than similar products without misleading labeling and would have cost less absent Chobani's false and misleading statements.

53.   Through the misleading "Only Natural Ingredients" labeling claim, Chobani was able to gain a greater share of the market than it would have otherwise and was able to increase the size of the market.

54.   For these reasons, the Yogurts were worth less than what Ms. Willis Albrigo and the Class paid for them.

55.   Ms. Willis Albrigo and the Class lost money because of Chobani's deceptive claims and practices in that they did not receive what they paid for when purchasing the Yogurts.

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

56.     California Code of Civil Procedure section 382 provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

57.     Pursuant to Code Civ. Proc. § 382, Plaintiff seeks certification of a class defined as:

> All persons who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased within the State of California, for personal or household use, and not for resale or distribution, Chobani Zero Sugar Yogurts.

58.     Excluded from the Class are: (a) Defendant, its officers, directors, and employees; affiliates and affiliates' officers, directors, and employees; (b) Plaintiff's Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

59.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60.     The Members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court. The Class includes at least thousands of Members.

61.     There is a well-defined community of interest in the common questions of law and fact affecting Class Members. The questions of law and fact common to Class Members predominate over questions affecting only individual Class Members, and include without limitation:

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

a.      whether Chobani communicated a message through its packaging and advertising that the Yogurts were made with, and contained, "Only Natural Ingredients";

b.      whether that message was material, or likely to be material, to a reasonable consumer;

c.      whether the ingredients in the Yogurts are artificial and/or synthetic;

d.      whether the challenged "Only Natural Ingredients" claim is false, misleading, or reasonably likely to deceive a reasonable consumer;

e.      whether Chobani's conduct violates public policy;

f.      whether Chobani's conduct violates California statutes or regulations;

g.      the proper amount of restitution; and

h.      the proper amount of attorneys' fees.

62.     These common questions of law and fact predominate over questions that affect only individual Class Members.

63.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's substantially uniform misconduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Yogurts and suffered economic injury because the Yogurts are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Yogurts, Plaintiff and Class Members would not have purchased them. Thus, Plaintiff advances the same claims and legal theories on behalf of herself and all other Class Members, and no defense is available to Defendant that is unique to Plaintiff.

64.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving false and misleading advertising.

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

65.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The harm, including the financial detriment suffered individually by Plaintiff and the other Class Members, are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, providing the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

66.     Chobani has acted on grounds applicable to the Class, thereby making appropriate declaratory relief concerning the Class as a whole.

67.     As a result of the foregoing, class treatment is appropriate under California Code of Civil Procedure section 382.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

68.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

69.      The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

70.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

### Fraudulent

71.     A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

23

72.    As set forth herein, Chobani's "Only Natural Ingredients" labeling claim for the Yogurts is likely to deceive reasonable consumers and the public.

**Unlawful**

73.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

74.    By violating these laws, Chobani has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

**Unfair**

75.    Chobani's conduct with respect to the labeling, advertising, and sale of the Yogurts was unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, did and does not outweigh the gravity of the harm to its victims.

76.    Chobani's conduct with respect to the labeling, advertising, and sale of the Yogurts was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

77.    Chobani's conduct with respect to the labeling, advertising, and sale of the Yogurts was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Chobani through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Yogurts believing they contained only natural ingredients.

78.    Chobani profited from the sale of the falsely, deceptively, and unlawfully advertised Yogurts to unwary consumers.

79.    Chobani's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Chobani's unlawful conduct.

80.    Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Yogurts, which were unjustly acquired through acts of unlawful competition.

**SECOND CAUSE OF ACTION**

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***

81.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

82.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

83.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

84.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Chobani relating to the Yogurts misled consumers acting reasonably as to whether the Yogurts are made with "Only Natural Ingredients."

85.    Plaintiff suffered injury in fact as a result of Chobani's actions as set forth herein because Plaintiff purchased the Yogurts in reliance on Chobani's false and misleading marketing claims stating the Yogurts were made with "Only Natural Ingredients."

86.    Chobani's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Chobani has advertised the

25

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

Yogurts in a manner that is untrue and misleading, which Chobani knew or reasonably should have known, and omitted material information from the Yogurts' labeling.

87.    Chobani profited from the sale of the falsely and deceptively advertised Yogurts to unwary consumers.

88.    As a result, Plaintiff, the Class, and the general public are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Chobani was unjustly enriched.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

89.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

90.    Plaintiff and Class Members conferred upon Chobani an economic benefit, in the form of profits resulting from the purchase and sale of the Yogurts.

91.    Chobani's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Yogurts, and the economic benefits conferred on Chobani are a direct and proximate result of its unlawful and inequitable conduct.

92.    It would be inequitable, unconscionable, and unjust for Chobani to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

93.    As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Chobani as a result of such business practices.

## PRAYER FOR RELIEF

94.    Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Chobani as to each and every cause of action, and the following remedies:

*Willis Albrigo v. Chobani, LLC*
CLASS ACTION COMPLAINT

a.      An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

b.      An Order requiring Chobani to bear the cost of Class Notice;

c.      An Order compelling Chobani to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Yogurts;

d.      An Order compelling Chobani to cease its unfair business practices;

e.      An Order requiring Chobani to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

f.      An Order requiring Chobani to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g.      An award of attorneys' fees and costs; and

h.      Any other and further relief that the Court deems necessary, just, or proper.

## JURY DEMAND

95.    Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 3, 2024                 /s/ Trevor Flynn
                                    **FITZGERALD MONROE FLYNN PC**
                                    JACK FITZGERALD
                                    *jfitzgerald@fmfpc.com*
                                    MELANIE R. MONROE
                                    *mmonroe@fmfpc.com*
                                    TREVOR FLYNN
                                    *tflynn@fmfpc.com*
                                    PETER GRAZUL
                                    *pgrazul@fmfpc.com*
                                    2341 Jefferson Street, Suite 200
                                    San Diego, California 92110
                                    Phone: (619) 215-1741

                                    ***Counsel for Plaintiff***

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/03/2024** at 11:36:01 AM

Clerk of the Superior Court
By Jonathan Renteria, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Chobani, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Laura Willis Albrigo, on behalf of herself, all others similarly situated, and the general public

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

    You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

    There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

    *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

    *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court, Central

330 West Broadway, San Diego, CA 92101

| CASE NUMBER: |
| --- |
| 37-2024-00031263-CU-NP-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Fitzgerald Monroe Flynn PC, Trevor Flynn,2341 Jefferson St., Suite 200, San Diego, CA 92110, 619-215-1744

DATE:
*(Fecha)* 07/03/2024        Clerk, by
                        *(Secretario)* _____   /s/ Renteria        , Deputy
                                                    **J. Renteria**          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*
3. ☒ on behalf of *(specify):* Chobani, LLC

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| FITZGERALD MONROE FLYNN PC<br>Trevor Flynn (SBN 253362); 2341 Jefferson St., Suite 200, San Diego, CA 92110<br><br>TELEPHONE NO.: 619-215-1741    FAX NO. :<br>EMAIL ADDRESS: tflynn@fmfpc.com<br>ATTORNEY FOR *(Name):*  Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**07/03/2024** at 11:36:01 AM<br>Clerk of the Superior Court<br>By Jonathan Renteria,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central - Civil

CASE NAME:
 Willis Albrigo v. Chobani, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2024-00031263-CU-NP-CTL |
| | | | JUDGE:  Judge James A Mangione<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Three
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: July 3, 2024
Trevor Flynn

_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Exhibit A
Page 1 of 2
Page 31

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7075 |

| PLAINTIFF(S) / PETITIONER(S): | Laura Willis Albrigo |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Chobani LLC |
|---|---|

WILLIS ALBRIGO VS CHOBANI LLC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2024-00031263-CU-NP-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:   James A Mangione                                      Department: C-75

## COMPLAINT/PETITION FILED: 07/03/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 04/04/2025 | 10:00 am | C-75 | James A Mangione |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

**NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)**

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2024-00031263-CU-NP-CTL        CASE TITLE: Willis Albrigo vs Chobani LLC [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
        (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), **_and_**
        (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>**Local ADR Programs for Civil Cases**</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>**Legal Representation and Advice**</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Laura Willis Albrigo |
|---|
| DEFENDANT(S): Chobani LLC |
| SHORT TITLE: WILLIS ALBRIGO VS CHOBANI LLC [IMAGED] |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2024-00031263-CU-NP-CTL |
|---|---|

Judge: James A Mangione                                    Department: C-75

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)              ☐  Non-binding private arbitration

☐  Mediation (private)                           ☐  Binding private arbitration

☐  Voluntary settlement conference (private)   ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                   Name of Defendant

_____          _____
Signature                                           Signature

_____          _____
Name of Plaintiff's Attorney                        Name of Defendant's Attorney

_____          _____
Signature                                           Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  07/03/2024                          _____
                                            JUDGE OF THE SUPERIOR COURT

Exhibit A
Page 37

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: 253362<br>NAME:  Trevor Flynn<br>FIRM NAME: Fitzgerald Monroe Flynn PC<br>STREET ADDRESS: 2341 Jefferson Street, Suite 200<br>CITY: San Diego    STATE: CA    ZIP CODE: 92110<br>TELEPHONE NO.: (619) 215-1741    FAX NO. :<br>E-MAIL ADDRESS: tflynn@fmfpc.com<br>ATTORNEY FOR (Name):  Plaintiff Laura Willis Albrigo | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS:  330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE:    San Diego, 92101
BRANCH NAME:  Central

Plaintiff/Petitioner:   Laura Willis Albrigo
Defendant/Respondent:  Chobani, LLC

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>37-2024-00031263-CU-NP-CTL |

TO *(insert name of party being served):* Chobani, LLC

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:  July 10, 2024

Trevor Flynn
(TYPE OR PRINT NAME)

► *Trevor Flynn*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1.  [ x ]  A copy of the summons and of the complaint.
2.  [ x ]  Other *(specify):*

    Notice to Litigants; Stipulation to Alternative Dispute Resolution; Notice of Case Assignment

*(To be completed by recipient):*

Date this form is signed:   7/30/24

Trent Norris, Attorney for Chobani, LLC
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► *Trent H. Norris*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

Exhibit A
Page 38