**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA WILLIS ALBRIGO, on behalf of herself, all others similarly situated, and the general public,<br><br>      Plaintiff,<br><br>      v.<br><br>CHOBANI, LLC<br><br>      Defendant. | Case No: 24-cv-01418-DMS-KSC<br><br>**PLAINTIFF'S OPPOSITION TO CHOBANI, LLC'S MOTION TO DISMISS**<br><br>Judge:    Hon. Dana M. Sabraw<br>Date:     December 6, 2024<br>Time:    1:30 p.m.<br>Dept.:    13A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION ....................................................................................... 1

FACTS ....................................................................................................... 1

ARGUMENT ............................................................................................. 3

    I.      PLAINTIFF PLAUSIBLY ALLEGES VIOLATIONS OF THE UCL
           AND FAL ........................................................................................ 3

           A.      Stevia Leaf Extract and Monk Fruit Extract Are Not Natural
                    Ingredients ........................................................................ 6

           B.      Manufactured Citric Acid is Not a Natural Ingredient ............. 9

           C.      Foods with Ingredients Added For Color Are Not All Natural ............. 14

           D.      Plaintiff Pleads Fraud with Sufficient Particularity ................ 16

    II.     PLAINTIFF DOES NOT ALLEGE MERE "LACK OF
          SUBSTANTIATION" ..................................................................... 17

    III.    PLAINTIFF HAS STANDING ....................................................... 17

    IV.    PLAINTIFF ALLEGES UNJUST ENRICHMENT ........................... 19

CONCLUSION ......................................................................................... 20

i

1
2

# <u>TABLE OF AUTHORITIES</u>

**Cases**

3
4

*Aguiar v. Merisant Co.*,
  2014 WL 6492220 (C.D. Cal. Mar. 24, 2014)............................................................7

5
6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................11

7
8

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)...............................................................................19, 20

9
10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................8

11
12

*Brazil v. Dole Packaged Foods*, LLC,
  660 Fed. App'x 531 (9th Cir. 2016)............................................................................4

13
14

*Broomfield v. Craft Brew Alliance, Inc.*,
  2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) .............................................................4

15
16

*Brunts v. Hornell Brewing Co.*,
  2023 WL 3568650 (E.D. Mo. May 19, 2023) ...........................................................15

17
18

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) .....................................................................................3

19
20

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018)...............................................................................16, 18

21
22

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016).......................................................................................3

23
24

*Fleming v. Dr. Squatch, LLC*,
  2024 WL 1676943 (N.D. Ill. Apr. 18, 2024) ...........................................................13

25
26

*Fried v. Snapple Beverage Corp.*,
  2024 WL 4479877 (S.D. Cal. Oct. 11, 2024) .................................................. passim

27
28

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) .........................................................................4

ii

*Gross v. Vilore Foods Co., Inc.*,
   2021 WL 1428487 (S.D. Cal. Apr. 15, 2021) ...................................................................4

*Hawkins v. Coca-Cola Co.*,
   654 F. Supp. 3d 290 (S.D.N.Y. 2023) ...................................................................9

*Horti v. Nestlé HealthCare Nutrition, Inc.*,
   2022 WL 2441560 (N.D. Cal. July 5, 2022) ...................................................................18

*Horti v. Nestle Healthcare Nutrition, Inc.*,
   2023 WL 8613601 (9th Cir. Dec. 13, 2023) ...................................................................19

*Iglesias v. Ariz. Beverages USA, LLC*,
   2023 WL 4053803 (N.D. Cal. June 16, 2023) ...................................................................9, 15

*In re KIND LLC "Healthy & All Natural" Litig.*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016) ...................................................................13

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ...................................................................3

*Martin v. Tradewinds Beverage Co.*,
   2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ...................................................................15

*Mason v. Reed's Inc.*,
   515 F. Supp. 3d 135 (S.D.N.Y. 2021) ...................................................................12, 13

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...................................................................19

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ...................................................................18

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ...................................................................3, 16

*Myers v. Starbucks Corp.*,
   2020 WL 13302437 (C.D. Cal. July 29, 2020) ...................................................................17

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) ...................................................................18

iii

*Nat'l Audubon Soc'y, Inc. v. Davis*,
   307 F.3d 835 (9th Cir. 2002)...............................................................19

*Noohi v. Kraft Heinz Co.*,
   2020 WL 5554255 (C.D. Cal. July 20, 2020).............................8, 10, 11

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................13

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015).............................................................18

*Rodriguez v. Mondelez Glob. LLC*,
   703 F. Supp. 3d 1191 (S.D. Cal. 2023)..........................................18, 20

*Roper v. Big Heart Pet Brands, Inc.*,
   510 F. Supp. 3d 903 (E.D. Cal. 2020)..................................................8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014) ............................................................19

*Sinatro v. Barilla Am., Inc.*,
   635 F. Supp. 3d 858 (N.D. Cal. 2022).................................................18

*Squeo v. Campbell Soup Company*,
   2024 WL 4557680 (N.D. Cal. Oct. 22, 2024).......................................10

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021)...............................................13

*Surzyn v. Diamond Foods, Inc.*,
   2014 WL 2212216 (N.D. Cal. 2014) .....................................................4

*Tarzian v. Kraft Heinz Foods Co.*,
   2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)............................................8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..........................................................................18

*Valencia v. Snapple Beverage Corp.*,
   2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ................................8, 15

iv

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).................................................................16

*Vicuna v. Alexia Foods, Inc.*,
  2012 WL 1497507 (N.D. Cal. 2012) .........................................................4

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024) .................................................................17

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008)....................................................................4

**Statutes**

7 U.S.C. § 6502(22) .......................................................................................7

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................16

**Regulations**

21 C.F.R. § 173.280(a)..............................................................................9, 11

21 C.F.R. § 173.280(d)..................................................................................12

21 C.F.R. § 172.882 ......................................................................................11

7 C.F.R. § 205.605(a).....................................................................................13

**Treatises**

55 Cal. Jur. 3d Restitution § 2......................................................................20

## INTRODUCTION

This consumer fraud class action alleges Defendant Chobani, LLC ("Chobani") deceptively represents its "zero sugar" yogurts (the "Yogurts") are made with "Only Natural Ingredients." That is false because the Yogurts contain Stevia Leaf Extract and Monk Fruit Extract, two manufactured, artificial ingredients. For much of the class period, Chobani also used Manufactured Citric Acid ("MCA"), an artificial chemical preservative, as an ingredient in the Yogurts. Additionally, except for the Vanilla and Toasted Coconut Vanilla flavors, Chobani uses ingredients to artificially color the Yogurts. In its motion to dismiss, *see* Dkt. No. 9 ("Mot."), Chobani argues that the ingredients undergo only "minimal" industrial processing and that reasonable consumers would not find the labels deceptive because the coloring ingredients come from natural sources. However, these factual disputes are inappropriate to resolve at the pleading stage, and Chobani's other dismissal arguments lack merit. The Court should deny the motion.

## FACTS

Chobani labels the Yogurts with prominent claims assuring consumers they are made with "Only Natural Ingredients." Compl. ¶¶ 1, 13. Reasonable consumers, including Plaintiff, understand "Only Natural Ingredients" to mean the Yogurts are not made with, and do not contain, any artificial or synthetic ingredients, and do not contain ingredients to artificially color them. *Id.* ¶¶ 14-15. The labeling claim is false, however, because "the Yogurts are made with Stevia Leaf Extract, Monk Fruit Extract and—in all varieties except Vanilla and Toasted Coconut Vanilla— additional ingredients as coloring agents," *id.* ¶ 15. And until recently, the Yogurts were also made with MCA. *Id*; *see also id.* ¶¶ 16-42 (alleging Stevia Leaf Extract, Monk Fruit Extract, added colors, and MCA are synthetic, artificial ingredients).

Stevia leaves occur naturally, but Stevia Leaf Extract is a crystallized, concentrated powder produced through an industrial process that removes its natural characteristics. *Id.* ¶¶ 16-26 (describing the industrial processes). Similarly, while whole monk fruit is natural, Monk Fruit Extract undergoes harsh industrial processing, including ion-exchange and size-

1

exclusion chromatography—and ethanol washing—to create an extremely sweet, concentrated powder stripped of its natural characteristics. *Id*. ¶¶ 27-31. The MCA Chobani used in its Yogurts is also "industrially manufactured" and "not the kind found in nature," *id*. ¶ 39, but instead "a major industrial chemical" that acts as "a chelating and buffering agent." *Id*. ¶ 42. The MCA that was in the Yogurts can also be found "in many cleaning products" and is "a starting material for synthesizing citrate esters, itaconic acid, acetonedicarboxylic acid, and other compounds." *Id*. ¶ 42.

Separately, Chobani utilizes ingredients for added colors, which further makes "Only Natural Ingredients" false and misleading. The FDA has "a longstanding policy concerning the use of 'natural' in human food labeling" and "consider[s] the term 'natural' to mean that nothing artificial or synthetic (***including all color additives regardless of source***) has been included in, or has been added to, a food that would not normally be expected to be in that food." *Id*. ¶ 32 (citing "Use of the Term Natural on Food Labeling, U.S. Food & Drug Administration"[1] and adding emphasis). "Since all added colors result in an artificially colored food, [FDA] object[s] to the declaration of any added color as . . . 'natural.'"[2] Thus, under FDA's definition, the ingredients used by Chobani for added color are, contrary to its label claim, not natural. Moreover, the USDA, on which Chobani relies as authoritative in support of its motion to dismiss, also has a policy prohibiting food manufacturers from using "natural claims" on foods containing any ingredients for color. *See* Def. Request for Judicial Notice, Ex. A, Dkt. No. 9-2 ["USDA Labeling Policy"], at 110 (setting forth labeling policies regarding "Natural Claims").

Starting approximately three years ago, Plaintiff occasionally purchased the Yogurts in several different flavors, including Black Cherry, Toasted Coconut Vanilla, Peach, Blueberry, Key Lime Pie, Mixed Berry, and Strawberry Cheesecake. In doing so, she was

---

[1] *At* https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling.

[2] *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-587100-label-declaration-certification-exempt-color-additives.

under the mistaken belief they were made with "Only Natural Ingredients," which she took to mean the Yogurts contained no ingredients that were artificial or synthetic. *Id*. ¶¶ 46-47. "When purchasing the Yogurts," Plaintiff "was looking for foods that contain only natural ingredients" and "[w]hether the Yogurts she purchased were made with, and contained only natural ingredients was material to her purchase decision because she considers such foods to be healthier alternatives than foods made with and containing artificial and synthetic ingredients." *Id*. ¶ 47. Like other consumers, Plaintiff would not have purchased them, or only would have paid less, had she known the truth about the Yogurts. *See id*. ¶ 51.

## ARGUMENT

## I.    PLAINTIFF PLAUSIBLY ALLEGES VIOLATIONS OF THE UCL AND FAL

"Plaintiff's claims under the California consumer protection statutes," including the UCL and FAL, "are governed by the 'reasonable consumer' test." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted). Under this standard, Plaintiff "must show that members of the public are likely to be deceived." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quotation omitted). That is, a Plaintiff must allege it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). A reasonable consumer is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture[,]" *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006) (quotation omitted), and is not "exceptionally acute and sophisticated. . . . [n]or need . . . necessarily be wary or suspicious of advertising claims," *Lavie*, 105 Cal. App. 4th at 509-10 (quotation omitted). "The fact that a . . . person who knew the whole truth [ ] would not be led astray by [the advertising] does not make it lawful[,]" and California consumer protection laws exist "to protect the general public who read advertisements and are likely to know nothing of the facts, not the dealers who publish them or other experts on their subject-matter." *Id*., at 510 (citation omitted).

Generally, "[c]ourts have recognized that the deceptive nature of a business practice under California's consumer protection statutes is usually a question of fact that is inappropriate for decision on . . . a motion to dismiss." *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453, at *5 (N.D. Cal. Sept. 1, 2017). The "Ninth Circuit has cautioned that it will be a 'rare situation' where granting a motion to dismiss on this ground is appropriate." *Gross v. Vilore Foods Co., Inc.*, 2021 WL 1428487, at *4 (S.D. Cal. Apr. 15, 2021) (Sabraw, J.) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). This is not one of those rare situations.

In fact, several California district courts have held that the deceptiveness of a "natural" label claim is a factual inquiry best suited for resolution at a later stage of the litigation. *See, e.g., Fried v. Snapple Beverage Corp.*, 2024 WL 4479877, at *4 (S.D. Cal. Oct. 11, 2024) (Sabraw, J.) (whether "MCA is natural because it 'can be derived from natural sources and manufactured using natural processes'" is "more suitable for evaluation after more evidence comes to light in discovery"); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute, the court finds that these claims cannot be resolved [at the motion to dismiss] stage of the litigation"); *Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at *3 (N.D. Cal. 2014) ("the question of whether consumers were deceived by an 'All Natural' designation must be resolved based on consideration of evidence—and not the pleading stage" (collecting cases)). The Ninth Circuit has also noted that whether citric acid is natural is a question of fact. *See Brazil v. Dole Packaged Foods*, LLC, 660 Fed. App'x 531, 533-34 (9th Cir. 2016) (reversing grant of summary judgment and dismissal because a trier of fact could find citric acid in a food was not "natural").

Here, "Only Natural Ingredients" is false under the reasonable consumer standard if any one of the challenged ingredients is artificial or synthetic. Plaintiff plausibly alleges that *each* of them are, and Chobani offers no salient argument why the Court should conclude, as a matter of law, otherwise. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384 (S.D. Fla. 2014) ("[T]he SAC alleges that reasonable consumers do *not* expect that foods labeled 'all

4

natural' will contain synthetic and/or artificial ingredients. At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." (record citations and quotations omitted)). Even the USDA Labeling Policy, over which Chobani requests judicial notice, prohibits "natural claims" on foods that contain any "coloring ingredient, chemical preservatives (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient." *See* USDA Labeling Policy at 110. Under this policy, "natural claims" are appropriate only when the "ingredients are not more than minimally processed," including such processes to make food "edible" (like smoking or roasting) and "physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices." *See id.*

The USDA Labeling Policy, *see* Mot. at 8, contradicts, rather than supports Chobani's arguments for dismissal. First, Chobani ignores that the USDA Labeling Policy specifically prohibits "natural claims" on foods that are made with *any* coloring ingredient or citric acid. And with respect to the "processing," Chobani points out that USDA includes some examples of "severe processing" like "solvent extraction, acid hydrolysis, and chemical bleaching." *See id*. But those are just *examples* of manufacturing processes USDA says are "clearly" more than minimal. *See* USDA Labeling Policy at 110. The policy does not purport to limit "more than minimal" to only those specific examples, nor does it address the specific manufacturing processes alleged in the complaint. *See id.*

While Chobani offers a self-serving characterization that "carbon ion exchange," by itself, is an example of "minimal processing," it does not even attempt to argue that an ingredient subject to electro-coagulation, adsorption through a resin column, elution using pure ethanol, and concentration and decolorizing, *see* Compl. ¶¶ 18-26, is only "minimally" processed. Chobani also offers no salient reason why, for example, a reasonable consumer would not consider a 14-step manufacturing process "more than minimally processed." *See id*. ¶ 31. But even if it had made that argument, that would still be a factual dispute. Plaintiff

5

need not prove, at this stage, that the ingredients in the Yogurts are more than minimally processed—that is a question of fact for later. Nevertheless, as explained in more detail below, each of the challenged ingredients is plausibly artificial.

**A.     Stevia Leaf Extract and Monk Fruit Extract Are Not Natural Ingredients**

To make Stevia Leaf Extract, dried stevia leaves are steeped in hot water to extract glycosides. Compl. ¶ 16. The glycoside-enriched water is then filtered so the remaining material can be isolated and purified. *Id*. After the glycosides are extracted from the plant, and the liquid is evaporated, it is further clarified by either chemical- or electro-coagulation and filtering in industrial tanks. *Id*. ¶ 18. The water extracted from the coagulation stage is then filtered by an industrial filter press to remove coagulated contaminants. *Id.* ¶ 19. The solution is then further "clarified through (i) an activated carbon filter, (ii) a cation exchange column, then (iii) an anion exchange column." *Id.* ¶ 20. The clarified and filtered solution is then "passed through a special macro-porous non-ionic resin column, during which time the steviol glycoside in the water gets adsorbed on the resin surface, which becomes saturated with steviol glycoside." *Id.* ¶ 21. Then, "a water-immiscible solvent, such as pure ethanol, is . . . passed through the column" and the "solvent takes up the steviol glycoside from resin." *Id*. ¶ 22. "The resulting alcoholic solution of steviol glycoside is then concentrated with a nanofiltration membrane device." *Id.* ¶ 23. "The resulting mixture is then further purified through a series of industrial processes," including the removal of alcoholic TSG syrup, further evaporation, and further condensing. *Id.* ¶ 24. The TSG syrup is decolorized and then spray-dried. *Id.* ¶¶ 25-26.

To make Monk Fruit Extract, the first step is to "harvest[], sort[], wash[], then crush[]" the whole fruit to extract the juice, "which is filtered" and "then heated to deactivate its enzymes." *Id*. ¶ 28. "Next, reverse osmosis is used to remove water molecules, leaving behind a more concentrated juice, which is further purified through chromatography techniques such as ion exchange and size-exclusion chromatography" resulting in "separate compounds." *Id*. ¶ 29. "Activated carbon and/or adsorption/separation polymer resin columns are then used to further purify the concentrate by absorbing glycosides" and are

6

1    "washed from the resin with ethanol," *id*. ¶ 30. Between 13 and 14 industrial manufacturing
2    steps are taken (depending on whether the final product is "spray dried" to create a powder
3    or not), resulting in a finished, manufactured product that does not resemble monk fruit found
4    in nature. *See id.* ¶ 31 (depicting a flow chart of the manufacturing process).

5    Accepting these allegations as true, it is plausible reasonable consumers would find
6    the industrial process resulting in the manufactured extract ingredients to be more than
7    minimally processed, and certainly not naturally occurring. It is also plausible reasonable
8    consumers would find the ingredients to be "manufactured by a chemical process or by a
9    process that chemically changes a substance extracted from naturally occurring plant[] . . .
10   sources," and thus, under Congress' definition, "synthetic." *See* 7 U.S.C. § 6502(22).

11   For example, in *Aguiar v. Merisant Co.*, the plaintiff alleged that a product sweetened
12   with "a highly processed, high-purity stevia extract" was falsely labeled as a natural
13   sweetener. 2014 WL 6492220, at *2 (C.D. Cal. Mar. 24, 2014). In moving to dismiss, the
14   defendants argued "no reasonable consumer could be misled by PureVia's 'natural' claim or
15   its packaging . . . ." *Id.*, at *5. In denying the motion, the court found reasonable consumers
16   could plausibly believe "natural" to mean the product did not contain "man-made, synthetic
17   ingredients" that were "subject to harsh chemical processes," *id.* That is the same thing
18   Plaintiff alleges here: the Stevia Leaf and Monk Fruit Extracts in the Yogurts, while sourced
19   from something natural, was extracted into a high-purity extract powder through harsh
20   chemical processes, resulting in something "man-made," i.e., "synthetic," "artificial," and
21   certainly not "natural." Compl. ¶¶ 16-31.

22   The Court should also reject Chobani's argument that Plaintiff "fails to connect the
23   manufacturing processes alleged with the processes Chobani actually uses to manufacture
24   the Products." Mot. at 7. Plaintiff alleges in detail how both extracts are industrially
25   produced, *see* Compl. ¶¶ 16-31, which ***necessarily*** includes the Stevia Leaf and Monk Fruit
26   Extract in the Yogurts. The Court should reject Chobani's self-serving assertion that
27   "[m]anufacturing processes vary greatly, and ingredients like these can be produced in a
28   variety of ways," Mot. at 7-8, as it is both unsupported and simply contradicts Plaintiff's

7

allegations that these two ingredients are manufactured in a way substantially similar to that described in the Complaint. The exact tanks, decolorization machines, and nanofiltration devices used to make the ingredients Chobani buys does not affect Plaintiff's allegation that all Stevia Leaf and Monk Fruit Extracts are "artificial," "synthetic," and "man-made," which the Court, of course, must accept as true at this stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

The cases Chobani offers in support of its argument, *see* Mot. at 5-12, are inapposite. In *Tarzian v. Kraft Heinz Foods Co.*, the court found allegations that "industrial citric acid is artificial because it is ***usually*** produced through the industrial fermentation process" and that "it is more economically viable to produce citric acid for industrial use through this fermentation process" were "insufficient to link fermented citric acid to that used in Capri Sun." 2019 WL 5064732, at *1, *4 (N.D. Ill. Oct. 9, 2019) (emphasis added). Here, Plaintiff does not allege the extracts are *usually* manufactured in a particular manner, or that there are more expensive alternatives Chobani could have utilized. Rather, Plaintiff alleges Stevia Leaf and Monk Fruit Extracts are always manufactured by industrial processes resulting from harsh chemical treatments to isolate, purify, and concentrate them. *See* Compl. ¶¶ 16-31. *Cf. Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) . (distinguishing *Tarzian* on a similar basis); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) ("[e]ven if [the challenged chemicals] . . . could be made naturally, here plaintiff alleges that these ingredients were not produced naturally, and the court must accept those non-conclusory factual allegations of the complaint in the light most favorable to plaintiff" (citations omitted)).

In *Valencia v. Snapple Beverage Corp.*, an out-of-circuit case, the complaint suffered the same defect as in *Tarzian*, with the court finding "[p]laintiff's 'generalized statement about [the production of citric acid] . . . not enough to adequately allege the citric acid used in the Product[s] is industrially produced.'" 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024) (quotation omitted). *See Fried*, 2024 WL 4479877, at *4 & n.2 ("The main cases relied

8

on by Defendant, *Tarzian* and *Valencia*, are out-of-Circuit decisions that are less persuasive to the Court on this matter" and distinguishing both as being "more generalized.").

Similarly, in *Hawkins v. Coca-Cola Co.*, another out-of-circuit decision, the district court dismissed the complaint because it "ma[d]e[] bare, unsubstantiated allegations" about the mere "possibility" that the product contained artificial ingredients "without any additional factual support," 654 F. Supp. 3d 290, 305 (S.D.N.Y. 2023). That is not the case here. *Cf. Iglesias v. Ariz. Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023) ("Plaintiff has sufficiently alleged that HFCS is a synthetic ingredient that is present in Defendant's Products and that a reasonable consumer would find the 'All Natural' label on the Products deceptive based on the presence of HFCS"). *Hawkins* is inapposite for the additional reason that there was disagreement as to what chemical was even in the product, whether artificial DL-Malic acid or natural L-Malic acid, and the plaintiff's allegations did not clarify that confusion. 654 F. Supp. 3d at 305-306. Here, there is no dispute the Yogurts are made with Stevia Leaf and Monk Fruit Extracts. Thus, the Court should deny Chobani's motion. *See Iglesias*, 2023 WL 4053803, at *4 (rejecting argument that "Plaintiff has not sufficiently alleged how the HFCS in Defendant's Products is made" nor "sufficiently alleged a connection between unnatural HFCS manufacturing processes generally and the HFCS used in Defendant's Products" because "Plaintiff alleges that HFCS is a synthetic compound [and] there is nothing in the record to suggest that it is naturally occurring").

## B.    Manufactured Citric Acid is Not a Natural Ingredient

Plaintiff alleges the Products are all made with "MCA, an industrial chemical," Compl. ¶¶ 2, 38-39. "While citric acid can be both a natural and a synthetic ingredient, depending on how it is sourced or produced, the citric acid utilized by Chobani in the Yogurts was industrially manufactured, and not the kind found in nature." *Id*. ¶ 39. "The manufacturing process for food-grade citric acid, like in the Yogurts, utilizes synthetic industrial chemicals to render the ingredient from mold (*Aspergillus niger*), including n-octyl alcohol and isoparaffinic petroleum hydrocarbons." *Id.* ¶ 40 (citing 21 C.F.R. § 173.280(a) (describing the "[s]olvent extraction process for citric acid").

9

Chobani asserts Plaintiff's allegations regarding citric acid fail for three reasons. First, Chobani says, "Plaintiff's claims as to citric acid . . . fail to plausibly (and without sufficient particularity) allege that citric acid is an artificial ingredient." Mot. at 9. This argument should be rejected for the same reason articulated above regarding the sweetener extracts— Plaintiff clearly alleges the MCA actually used in the Yogurts is the manufactured kind. *See* Compl. ¶ 39; *see also Squeo v. Campbell Soup Company*, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024) ("Plaintiffs' well-supported allegations render it highly likely that the citric acid included in the chips was artificially produced. At the very least, those allegations permit the Court to reasonably infer that the chips contain artificially produced citric acid" and distinguishing *Tarzian*, *Hawkins*, and *Valencia*, among others).

Second, Chobani says, "Plaintiff also fails . . . to allege that the manufacturing process described is used by Chobani or its suppliers." Mot. at 9. Chobani again misconstrues the Complaint. Plaintiff alleges "the citric acid utilized by Chobani in the Yogurts was industrially manufactured, and not the kind found in nature." Compl. ¶ 39. This "allege[s] unequivocally that the Defendant[] do[es] in fact use [manufactured citric acid]." *See Noohi*, 2020 WL 5554255, at *2.

In *Fried*, the plaintiff made virtually identical allegations regarding the presence of MCA, and how that rendered "All Natural" claims false and misleading. 2024 WL 4479877, at *1. The defendant, in turn, raised a virtually identical argument as Chobani in moving to dismiss. *See id.*, at *4 ("Defendant argues that Plaintiff has failed to allege that the type of citric acid used by Defendant is artificial"). In rejecting that argument, this Court concluded "Defendant is incorrect that Plaintiff fails to 'allege—anywhere—that the citric acid in Snapple Juice Drinks is artificial or synthetic.'" *Id*. (record citation omitted). This was because:

> Plaintiff's Complaint link[ed] MCA to Defendant's Products three times. First, Plaintiff states that "[m]anufactured citric acid ('MCA'), which is in the Products, is an industrial chemical derived, not from fruit or vegetables, but from the fermentation of crude sugars (e.g., molasses and corn starch) by the mold, *Aspergillus niger*." Second, Plaintiff asserts "each of the Products

contain MCAs". Third, farther down in his Complaint, Plaintiff alleges again that Defendant's "Products contain MCA, an industrial chemical". These are factual allegations that, at this stage, the Court is required to accept.

*Id.* (record citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Noohi*, 2020 WL 5554255, at *2 (Plaintiff's statement that "[a]ll of the Products contain artificial DL-Malic Acid" was an "unequivoca[l] alleg[ation]" of fact). Plaintiff—represented by the same counsel as Fried—makes the same substantive allegations in this Complaint, *see* Compl. ¶¶ 38-39, 42, and the Court should reject Chobani's argument for the same reasons it rejected the defendant's argument in *Fried*.

Third, Chobani argues that "Plaintiff fails to explain how fermentation (a natural biological process) by a mold (a naturally occurring organism) creates an artificial ingredient," and thus how a reasonable consumer would be deceived. Mot. at 10 (italics omitted). Federal law, Chobani says, "recognizes in numerous sources that microbial fermentation of carbohydrates—the process that Plaintiff alleges—is natural," and that "*expressly* provides that citric acid produced in this manner is not synthetic." *Id.* This argument fails according to Chobani's own self-serving conditions, because manufactured citric acid *does* contain something "synthetic." The manufacturing process for food-grade citric acid utilizes synthetic industrial chemicals to render the ingredient from mold (*Aspergillus niger*), including n-octyl alcohol[3] and isoparaffinic petroleum hydrocarbons.[4] *See* 21 C.F.R. § 173.280(a) ("[s]olvent extraction process for citric acid"). But while, with good manufacturing practices, "[r]esidues of n-octyl alcohol and synthetic isoparaffinic

---

[3] "[n]-Octanol is a food additive permitted for direct addition to food for human consumption as a **synthetic** flavoring substance." *See* https://pubchem.ncbi.nlm.nih.gov/compound/1-Octanol#section=FDA-Requirements&fullscreen=true (emphasis added).

[4] "Isoparaffins are synthetic solvents with a unique combination of narrow boiling range, flash point and evaporation rate. Its synthetic nature means the chemical composition is carefully controlled which in turn imparts consistent solvent performance." *See* https://tinyurl.com/2ss2my7h; *see also* 21 C.F.R. § 172.882 ("[s]ynthetic isoparaffinic petroleum hydrocarbons may be safely used in food").

11

petroleum hydrocarbons are removed," *some* chemical residues *will* inevitably remain. *See id*. § 173.280(d) ("Current good manufacturing practice results in residues not exceeding 16 parts per million (ppm) n-octyl alcohol and 0.47 ppm synthetic isoparaffinic petroleum hydrocarbons in citric acid."). Thus, Chobani is wrong that manufactured citric acid is not synthetic because it is made with at least two synthetic components and, moreover, those synthetics, even if just trace amounts, were incorporated into the Yogurts as a result.

But the Court need not accept Chobani's unsupported, self-serving conditions on what "natural" means in the first place. Not only is this a factual dispute unsuitable for resolution now, but the FDA plainly disagrees with Chobani, as evidenced by the warning letters it has sent food manufacturers using "natural" claims on products containing MCA. In one, the FDA warned Oak Tree Farm Dairy that "[t]he term 'all natural' on the 'OAKTREE ALL NATURAL LEMONADE' label is inappropriate . . . because it contains citric acid." Plaintiff's Request for Judicial Notice, Dkt. No. 11, Ex. 1. The letter noted that "[a]lthough FDA has not established a regulatory definition for 'natural,' . . . FDA's policy regarding the use of 'natural,' means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food." *Id*. Similarly, FDA warned Hirzel Canning Company that "labels bear[ing] the term 'All NATURAL'" were "in violation of Section 403 of the Federal Food Drug, and Cosmetic Act (the Act) and Title 21, Code of Federal Regulations (CFR), Part 101," because "the addition of . . . citric acid to these products preclude use of the term 'natural' to describe this product." *See id.*, Ex. 2.

Case law, including from California, New York, and elsewhere, is also in accord. In *Mason v. Reed's Inc.*, a New York district court considered allegations "that the defendant falsely advertises the products as 'All-Natural' even though the products contain citric acid as extracted from *Aspergillus niger*." *See* 515 F. Supp. 3d 135, 143-44 (S.D.N.Y. 2021). The defendant moved to dismiss, arguing, just like Chobani, that *Aspergillus niger* creates citric acid in a natural process and thus "all natural" claims are not plausibly misleading to reasonable consumers. *Id*. The court disagreed, holding "plaintiff has pleaded adequately that the 'All-Natural' statements are likely to be materially misleading" in light of the citric

12

acid in the products. *Id*. at 144 (citations omitted). Notably, that court pointed to the same two FDA letters of which Plaintiff seeks judicial notice here, and found that, while not dispositive, "the FDA material, at minimum, makes the plaintiff's allegations plausible." *Id*.[5] *See also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1133, 1147 (S.D. Cal. 2021) ("[p]laintiffs allege that Defendant misrepresents the natural claims because its products contain 'non-natural, synthetic and/or artificial substances,' such as . . . citric acid . . . . at this stage, the Court must accept Plaintiffs' allegations as true and construe them in Plaintiffs' favor" (record citations and footnote omitted)); *Fleming v. Dr. Squatch, LLC*, 2024 WL 1676943, at *1-2 (N.D. Ill. Apr. 18, 2024) ("Plaintiff's consumer fraud and unjust enrichment claims are plausible" where she alleged "NATURAL" label was misleading due to presence of unnatural citric acid and other "synthetic, manufactured, and/or chemically modified or manufactured ingredients").

That 7 C.F.R. § 205.605(a) lists "acids" (including citric) under "nonsynthetics" for purposes of organic labeling, *see* Mot. at 10, does not counsel, let alone require, a different result. That is because the "standards for what is considered organic by the National Organic Program and the USDA is a distinct inquiry from what is considered natural for the purposes of labeling," and it is "the FDA [that] has the authority to regulate labeling on most food products." *Mason*, 515 F. Supp. 3d at 145 (citing *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 695 (S.D.N.Y. 2016) ("[T]he issue of whether the particular ingredients referenced in the Complaint rendered the 'all natural' label misleading seems to be particularly within the FDA's discretion.")); *see also Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) ("because Buitoni Pastas are not labeled as 'organic,' the definition of 'synthetic' under the NOP does not apply"). Moreover, because "[t]he citric acid, as used in the defendant's products may have synthetic solvent residues from the way in which it is produced, which would argue against its being natural," *see Mason*, 515 F.

---

[5] *See Mason v. Reed's Inc.*, 18-cv-10826-JGK (S.D.N.Y.), Dkt. Nos. 43-1 & 43-2, Exs. A & B in support of opposition to motion to dismiss SAC (FDA Letters to Hirzel Canning Company 29-Aug-01, and Oak Tree Farm Dairy, Inc. 16-Aug-01).

*Albrigo v. Chobani, LLC*, No. 24-cv-01418-DMS-KSC
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1
2
Supp. 3d at 145, it is not clear the citric acid Chobani uses would qualify as "organic" anyway.

3 **C.    Foods with Ingredients Added For Color Are Not All Natural**

4
5
6
7
8
9
10
11
12
13
14
15
16
The FDA has "a longstanding policy concerning the use of 'natural' in human food labeling" and "consider[s] the term 'natural' to mean that nothing artificial or synthetic (***including all color additives regardless of source***) has been included in, or has been added to, a food that would not normally be expected to be in that food." Compl. ¶ 32 (adding emphasis and citing "Use of the Term Natural on Food Labeling, U.S. Food & Drug Administration"[6]). This longstanding policy, which FDA has never repudiated, exists because labels containing terms like "all natural" are "erroneously interpreted by reasonable consumers to mean the color is a naturally-occurring constituent in the food," but, contrary to that understanding, "any ingredient added for color is not naturally occurring to the product," and thus "all natural" claims on foods with ingredients added for color are misleading. *See id*. ¶ 34 (citing *See a Sip: A Basic Guide To Color Additives*, FLAVORMAN (June 16, 2021)). "Since all added colors result in an artificially colored food, [FDA] object[s] to the declaration of any added color as . . . 'natural.'"[7]

17
18
19
20
21
22
23
Moreover, the USDA, on which Chobani relies in support of its motion, states plainly the "term 'natural' may be used on labeling for meat products and poultry products, provided the applicant for such labeling demonstrates that: (1) the product does not contain any . . . coloring ingredient . . . ." USDA Labeling Policy at 110. Moreover, this is not meant to apply only to artificial coloring, as USDA specifically calls out the word "artificial" when referencing "flavor or flavoring" and calls out "artificial or synthetic" when addressing "ingredients" that are otherwise disqualified from using "natural claims." *See id*. Thus, like

24
25
26
27
28

---

[6]    *Available at* https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling.

[7]    *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-587100-label-declaration-certification-exempt-color-additives.

*Albrigo v. Chobani, LLC*, No. 24-cv-01418-DMS-KSC
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

the FDA, the USDA Labeling Policy specifically prohibits food manufacturers from using "natural claims" on foods with ingredients used to color them—like the Yogurts.

Here, Chobani does not deny that it uses ingredients as added colors in some of the Yogurts. Instead, it moves to dismiss on the basis that no reasonable consumer would be misled because the coloring ingredients are vegetable juice concentrates. Mot. at 16. But this argument misses the point. FDA's longstanding policy is that when colors are added to foods, regardless of their source, it is misleading to call the food "natural." In *Iglesias*, for example, the plaintiff alleged certain "All Natural," "100% Natural," and "100% All Natural" claims on the defendant's products were misleading because they included "added coloring" from "fruit and vegetable juices," including, like here, "beta carotene." 2023 WL 4053803, *1. In finding the plaintiff's consumer fraud claims plausible, the court noted that "[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' label claims . . . to mean that a product does not contain any non-natural ingredients," and that "Plaintiff's allegations are sufficient to establish that a reasonable consumer could plausibly conclude that a beverage labeled as 'All Natural' should not include color additives," *id*., at *3-4 (citations omitted); *see also Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *1 (C.D. Cal. Apr. 27, 2017) ("100% Natural," and made with "100% Natural Ingredients" were misleading because they contained ingredients for added color); *Brunts v. Hornell Brewing Co.* 2023 WL 3568650, at *4 (E.D. Mo. May 19, 2023) (denying motion to dismiss allegations that "reasonable consumers do not expect ingredients such as added colors . . . to be present in products labeled 'All Natural' or '100% Natural'").

In support of its argument that consumers are not deceived by "all natural" claims despite the presence of added colors, Chobani cites only *Valencia* (again). There, the district court found that "FDA's regulations or views are irrelevant . . . when it comes to determining whether a reasonable consumer would be deceived or misled under GBL §§ 349-50." 2024 WL 1158476, at *3 (citations omitted). But *Valencia* acknowledged this holding was contrary to other district courts in New York, including *Mason*, discussed *supra*. *See id*., at

15

*4 ("I respectfully disagree with my admired colleague that the FDA's views, without more, cast sufficient light on those of consumers to render a claim plausible.").

The Court recently recognized there is some discord in this Circuit on whether "FDA statements are relevant in analyzing deceptive labeling claims," and granted a motion to dismiss claims that "All Natural" labels were deceptive due to the presence of added colors. *Fried*, 2024 WL 4479877, at *3. It agreed with some other courts that FDA guidance *alone* is insufficient to show that members of the public are likely to be deceived. *Id*. (quotation omitted). The Court also found that the "ingredient lists clarify any misunderstanding a reasonable consumer would have." *Id*. Here, Plaintiff alleges not only that the FDA policy prohibits "natural" claims on foods with added colors, but also alleges it exists *because* "natural claims" are "erroneously interpreted by reasonable consumers to mean the color is a naturally-occurring constituent in the food." Compl. ¶ 34. Plaintiff also alleges that, in accordance with the FDA policy, the USDA Labeling Policy similarly prohibits "natural claims" on any food products with any coloring ingredients. *Id*. ¶ 35; *see also* USDA Labeling Policy at 110. Given the accord between FDA and USDA on the issue, the Court should find that whether consumers were misled by this practice is a question of fact not suitable for resolution now on a motion to dismiss.

**D.    Plaintiff Pleads Fraud with Sufficient Particularity**

The Court should reject Chobani's argument that Plaintiff fails to plead fraud with sufficient particularity. Mot. at 5. To satisfy Rule 9(b)'s heightened pleading requirement, a plaintiff need only "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). "Here, Plaintiff['s] complaint satisfies the Rule 9(b) heightened pleading standard in alleging the basic premise of 'what is false or misleading about a statement, and why it is false.'" *Moore*, 966 F.3d at 1019  (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted)). It is sufficient for Plaintiff to allege the "who, what, when, where, and how of the misconduct" alleged, *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted). It is sufficient that Plaintiff "allege[] the particular label she herself saw," and when she bought it. *See*

16

1   *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 786 (9th Cir. 2024). *See also* Compl. ¶¶
2   46-55 (detailing the "who, what, when, and where" of the deception).

3   **II.   PLAINTIFF DOES NOT ALLEGE MERE "LACK OF SUBSTANTIATION"**

4          Chobani argues Plaintiff's Complaint is a "bare" and "conclusory request that Chobani
5   prove that the stevia leaf extract, monk fruit extract, vegetable juice concentrate, and citric
6   acid ingredients in the Products are not artificial." Mot. at 18-19. That is wrong. While
7   private litigants may not bring "lack of substantiation" claims under California's consumer
8   protections statutes, that is not what Plaintiff is doing here. As explained above, she alleges
9   the Stevia Leaf Extract, Monk Fruit Extract, MCA, and added colors in the Yogurts are
10  synthetic, artificial ingredients and that, because the Yogurts were advertised as being made
11  with "Only Natural Ingredients," she was misled and suffered injury in the form of
12  overpayment. *See* Compl. ¶¶ 12-31, 38-42, 46-55. The only case Chobani cites, *Myers v.
13  Starbucks Corp.*, 2020 WL 13302437 (C.D. Cal. July 29, 2020), *see* Mot. at 19, is factually
14  inapposite. There, the plaintiff challenged certain "traceability" claims on products made by
15  various manufacturers claiming the defendants could not "guarantee that their cocoa
16  suppliers did not engage in deplorable environmental and labor practices." *Myers*, 2020 WL
17  13302437, at *2. But after dismissing plaintiff's affirmative misrepresentation claims as
18  implausible, the only remaining claim was that a defendant "cannot substantiate its
19  traceability claims," which the Court dismissed because it merely asserted an improper lack
20  of substantiation claim. *See id.*, at *5. But Plaintiff makes no such allegation here.

21  **III.   PLAINTIFF HAS STANDING**

22         Chobani raises two arguments regarding Plaintiff's standing. First, it says Plaintiff has
23  not alleged she suffered injury. Mot. at 20-21. Second, it says Plaintiff lacks standing to seek
24  injunctive relief. *Id.* at 21-23. As to its second argument, Plaintiff concedes that she does not
25  allege sufficient facts to entitle her to injunctive relief in federal court, as currently pleaded.
26  However, none of Plaintiff's causes of action specifically allege entitlement to injunctive
27  relief; thus, Chobani's argument that her lack of standing in this regard should result in
28  dismissal is misplaced.

But as to Chobani's first standing argument, that "Plaintiff . . . fails to sufficiently allege an economic injury for the purported price premium she paid," *id*. at 21, Chobani is wrong. "To establish Article III standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1204 (S.D. Cal. 2023) (Sabraw, J.) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). The Ninth Circuit has established "that overpayment is a viable theory of economic injury" and has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *see also Davidson*, 889 F.3d at 965 ("[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("In a false advertising case, plaintiffs meet th[e] economic injury-in-fact] requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." (internal quotation omitted)).

Citing a single case, *Horti v. Nestlé HealthCare Nutrition, Inc.*, 2022 WL 2441560 (N.D. Cal. July 5, 2022), which itself relied on a single case, *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019),[8] Chobani argues that Plaintiff should be required to allege some unspecified "details" about the "price premium" she alleges she paid as a result of the false advertising. Mot. at 21. But *Horti* is bad law—it was reversed on appeal by the Ninth

---

[8] The court in *Naimi* limited its dismissal for lack of standing "[u]nder New York law" which, that court said, does not allege "a cognizable injury because it conflates the deceptive act with the injury" but the "court did not analyze the sufficiency of the allegation under either Ninth Circuit or California law." *See Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 876 (N.D. Cal. 2022) (distinguishing *Naimi* and setting forth Ninth Circuit's standard for economic injury).

*Albrigo v. Chobani, LLC*, No. 24-cv-01418-DMS-KSC
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Circuit on the very issue Chobani puts forward in its motion. *See Horti v. Nestle Healthcare Nutrition, Inc.*, 2023 WL 8613601, at *1 (9th Cir. Dec. 13, 2023). In reversing the district court, the Ninth Circuit found that "Plaintiffs allege that they purchased a product they otherwise would not have bought but for defendant's alleged misrepresentations" *Id.* "The purchase price itself is therefore a 'tangible economic injury' and is sufficient at the pleading stage to show the plaintiffs 'suffered actual, discrete, and direct injury in fact in the form of financial losses . . . .'" *Id.* (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855-56 (9th Cir. 2002)). The Ninth Circuit further noted that "[b]ecause the plaintiffs claim that they 'spent money that, absent defendant['s] actions, they would not have spent,' they have pleaded 'a quintessential injury-in-fact' to support Article III standing." *Id.* (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)).

Plaintiff alleges she read and relied on the "Only Natural Ingredients" label claim, that it was material to her purchase decision, and that it was false. Compl. ¶¶ 47-48. She further alleges that, as a result of the deceptive label, she "paid more for the Yogurts and would not have purchased, or would not have been willing to pay as much for the Yogurts if she knew they contained artificial or synthetic ingredients." *Id.* ¶ 51. She alleges "[t]he Yogurts cost more than similar products without misleading labeling and would have cost less absent Chobani's false and misleading statements." *Id.* ¶ 52. Thus, Plaintiff "and the Class lost money because of Chobani's deceptive claims and practices in that they did not receive what they paid for when purchasing the Yogurts." *Id.* ¶ 55. This overpayment "is a quintessential injury-in-fact." *See Maya*, 658 F.3d at 1069. The Court should reject Chobani's unsupported arguments to the contrary.

## IV.    PLAINTIFF ALLEGES UNJUST ENRICHMENT

Plaintiff has also plausibly stated a claim for unjust enrichment. In California, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). "[T]he theory underlying" an unjust enrichment claim is "that a defendant has

been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id*. (quoting 55 Cal. Jur. 3d Restitution § 2). "The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id*. (quoting 55 Cal. Jur. 3d Restitution § 2).

Where a plaintiff alleges she is "entitled to restitution because Defendant derived financial benefits from the class members' purchase" of products and that "it would be inequitable, unconscionable, and unjust" for defendants to "profit from their wrongful conduct," she has "sufficiently stated a quasi-contract cause of action," *Rodriguez*, 703 F. Supp. 3d at 1213-14. Here, Plaintiff alleges she and other purchasers "conferred upon Chobani an economic benefit, in the form of profits resulting from the purchase and sale of the Yogurts." Compl. ¶ 90. Plaintiff further alleges "the economic benefits conferred on Chobani are a direct and proximate result of its unlawful and inequitable conduct," and that it would be "inequitable, unconscionable, and unjust for Chobani to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct." *Id*. ¶¶ 91-92. Accordingly, she has stated a claim for unjust enrichment.

## **CONCLUSION**

The Court should deny Defendant's motion. However, if the Court is inclined to grant the motion in any respect, Plaintiff requests that it be with leave to amend.

Dated: November 15, 2024                Respectfully Submitted,

                /s/ Trevor Flynn
                **FITZGERALD MONROE FLYNN PC**
                JACK FITZGERALD
                *jfitzgerald@fmfpc.com*
                MELANIE R. MONROE
                *mmonroe@fmfpc.com*
                TREVOR FLYNN
                *tflynn@fmfpc.com*
                PETER GRAZUL
                *pgrazul@fmfpc.com*
                2341 Jefferson Street, Suite 200

20

San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

21