1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| LAURA WILLIS ALBRIGO, et al, <br><br> Plaintiffs, <br><br> v. <br><br> CHOBANI, LLC, <br><br> Defendant. | Case No.: 3:24-cv-01418-BJC-KSC <br><br> **ORDER:** <br><br> **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 9];** <br><br> **(2) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 11]; AND** <br><br> **(3) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 9-1.]** |

20
21
22
23
24
25
26

Pending before the Court is Defendant Chobani, LLC's Motion to Dismiss Complaint and Request for Judicial Notice.  ECF No. 9, 9-1.  Plaintiff Laura Albrigo ("Plaintiff") filed a Response in Opposition, ECF No. 10, and a Request for Judicial Notice, ECF No. 11.  Defendant filed a Reply.  ECF No. 12.  For the reasons below, the Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The parties' Requests for Judicial Notice are GRANTED.

27

## I.    Background

28

Defendant Chobani manufactures and sells Greek yogurt.  Its products come in a

variety of flavors including Vanilla, Black Cherry, Cookie Dough, Bananas Foster, High Protein, Less Sugar, and Zero Sugar, to name a few.  Defendant advertises that its zero sugar Greek yogurts ("Products") are made with "Only Natural Ingredients."  For example:



Complaint ECF No. 1-2 ¶ 13.

Plaintiff brings this putative class action on behalf of herself and all other similarly situated consumers who relied on the advertising of Chobani's line of Zero Sugar Greek yogurt.  According to Plaintiff, reasonable consumers, including Plaintiff Albrigo, interpret "Only Natural Ingredients" to mean the Products are not made with, and do not contain, any artificial or synthetic ingredients.  *Id*. ¶ 14.  Plaintiff alleges that the labels on the Products are misleading or false because the Products contain stevia leaf extract, monk fruit extract, and manufactured citric acid, which Plaintiff asserts are processed using industrial processes rendering them artificial.  *Id*. ¶¶ 16–42.  Plaintiff also alleges that the labels are deceptive because some of the Products contain artificial coloring that is not naturally occurring.  *Id*. ¶ 15.

On July 3, 2024, Plaintiff filed the Complaint in the Superior Court of California, San Diego County raising claims for (1) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (3) unjust enrichment based on Defendant's conduct. ECF No. 1-2. On August 9, 2024, Defendant removed the action to this Court. ECF No. 1. On October 11, 2024, Defendant filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and a Request for Judicial Notice. ECF Nos. 9, 9-1. On November 15, 2024, Plaintiff filed a Response in Opposition along with a Request for Judicial Notice. ECF Nos. 10, 11. On November 27, 2024, Defendant filed a Reply. ECF No. 12.

## II.    Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed.R.Civ.P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must

"accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009 (internal quotation marks omitted).

> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Id.* at 1125.

### III.   Judicial Notice

A court "may judicially notice a fact that is not subject to reasonable dispute," either because it is (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[A]s a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed.R.Civ.P. 12(d), [but] it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." *U.S. v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008). The "[r]ecords and reports of administrative bodies" are subject to judicial notice. *Barron v. Reich*, 13 F.3d 1370, 1377

(9th Cir.1994); *see also 14.02 Acres of Land*, 547 F.3d at 955 ("Judicial notice is appropriate for records and 'reports of administrative bodies.'")

### A. Defendant's Request for Judicial Notice

Defendant Chobani, LLC ("Chobani") requests that the Court take judicial notice of and/or incorporate by reference the following documents in support of Chobani's Motion to Dismiss Plaintiff's Complaint: (1) U.S. Department of Agriculture ("USDA"), Food Standards and Labeling Policy Book (Feb. 2024)[1], and (2) U.S. Food and Drug Administration ("FDA"), Use of the Term Natural on Food Labeling (Oct. 22, 2018)[2]. Defendant Req. Judicial Notice, ECF No. 9-1.

The Court grants Defendant's requests. First, the USDA document is publicly available and maintained on the USDA's government webpage. In addition, it is a report of an administrative body. *Barron,* 13 F.3d at 1377 (A court may take judicial notice of "[r]ecords and reports of administrative bodies".) For these reasons, its accuracy is not reasonably subject to dispute. Defendant has demonstrated that the document is relevant for purposes of the present motion because it provides "context to the manufacturing processes that are central to Plaintiff's claims." ECF No. 9-1 at 3. Similarly, the FDA document titled "Use of the Term Natural on Food Labeling" (Oct. 22, 2018) is publicly available because it is maintained on the FDA's government website. Thus, it's accuracy is not reasonably subject to dispute. Defendant has demonstrated that the FDA document "is relevant because it forms the primary basis for Plaintiff's allegations that vegetable juice concentrate is an artificial ingredient." *Id.* Accordingly, the Court takes judicial notice of Exhibit A, USDA Food Standards and Labeling Policy Book, and Exhibit B, FDA Use of the Term Natural on Food Labeling (Oct. 22, 2018). *See generally Wilson v. Frito-Lay North America, Inc.,* 260 F.Supp.3d 1202, 1207 (N.D. Cal. 2017)("Courts routinely

---

[1] https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-book.pdf.

[2] https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/use-term-natural-food-labeling.

take judicial notice of . . . FDA guidance documents, many of which also appear on the FDA's public website.")

### B. Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of the following documents to refute Chobani's contention that the FDA considers Manufactured Citric Acid "natural" for labeling purposes: (1) The FDA's August 16, 2001, Warning Letter to Oak Tree Dairy Farm, Inc. and (2) The FDA's August 29, 2001, Warning Letter to Hirzel Canning Company.  Plaintiff Req.  Judicial Notice, ECF No. 11.

The Court grants Plaintiff's request for judicial notice because the FDA warning letters submitted by Plaintiff are judicially noticeable as records of an administrative body. *Barron*, 13 F.3d at 1377.  The FDA is a "federal regulatory agency in the Department of Health and Human Services."  FDA Organization,  https://www.fda.gov/about-fda/fda-organization (last visited May 9, 2025).  Defendant does not oppose Plaintiff's request regarding the letters.  Because the FDA warning letters are not reasonably subject to dispute, the Court GRANTS Plaintiff's request for judicial notice.

### IV.    Analysis

Defendant contends the Complaint must be dismissed for the following reasons: (1) Plaintiff has not alleged a claim that is plausible on its face pursuant to Federal Rules of Civil Procedure 8; (2) Plaintiff's fraud claims are deficient under Rule 9(b) because she has not alleged them with particularity; (3) a reasonable consumer would not be misled by the "Only Natural Ingredients" statement on the product label; (4) Plaintiff's substantiation claim is impermissible; and (5) Plaintiff lacks standing.  ECF No. 9.

### A.  Unfair Competition Law and False Advertising Law Claims

The first and second causes of action in the Complaint raise claims under the UCL and FAL, respectively.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal.Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability[.]"  *Kearns*, 567 F.3d at 1127 (citing *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)).  Plaintiff's UCL claim

asserts that Defendant's "Only Natural Ingredients" label is "unlawful" because the practice violates the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*; the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et se*q; and California Sherman Food, Drug and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.  Compl. ¶ 73.  Plaintiff also asserts that the labels are "unfair" because they violate public policy and are substantially injurious to consumers.  Compl. ¶¶ 75-77.  According to Plaintiff, Defendant's acts are "fraudulent" because Chobani's "Only Natural Ingredients" labeling claim for the Products is likely to deceive reasonable consumers and the public.  Compl. ¶ 72.

The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof . . . to make . . . any statement. . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"  Cal.Bus. & Prof. Code § 17500.  Plaintiff asserts in the FAL claim that Chobani's "Only Natural Ingredients" label is "untrue or misleading" because "the advertisements, labeling, policies, acts, and practices of Chobani relating to the Products misled consumers acting reasonably as to whether the Products are made with 'Only Natural Ingredients.'"  Compl. ¶ 84.

UCL and FAL claims are governed by the "reasonable consumer" test.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  Under this standard, a plaintiff "must show that members of the public are likely to be deceived."  *Moore v. Mars Petcare, US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citations omitted).  "Likely to deceive" means "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496, 508 (2003).  In general, dismissal for failure to state a claim in this context is "rare" and California courts have "recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  *Williams v. Gerber Products Co.,* 552 F.3d 934, 938-939 (9th Cir. 2009).  However, there are some circumstances where a court can make this determination based

on a review of the product packaging.  *Id.* at 939 (explaining that dismissal was appropriate when "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived").  Here, the Court finds that Plaintiff has sufficiently asserted claims under the UCL and FAL regarding stevia root extract, monk fruit extract, manufactured citric acid and coloring agents.

### 1.  Stevia Leaf Extract and Monk Fruit Extract

Defendant argues that Plaintiff fails to satisfy Rule 9 because Plaintiff fails to connect the alleged manufacturing processes to the Products or allege more than a possibility that the Products contain artificial ingredients.  Mot. ECF No. 9 at 5-6.  Defendant further claims that "reasonable consumers of yogurt would not believe that ingredients derived and extracted from natural sources can never be processed, i.e., can only appear in the form in which they appear in nature" relying on *Vitort v. Kroger*, No. 3:20-cv-01317, 2021 WL 6061864 (D. Or. Sept. 13, 2021), aff'd, 2023 WL 3143690 (9th Cir. Apr. 28, 2023).  *Id.* at 8.  According to Defendant, federal law recognizes that minimally processed ingredients like these are consistent with "natural" claims, in contrast to ingredients processed using "relatively severe processes," such as "solvent extraction, acid hydrolysis, and chemical bleaching."  *Id.*

In response, Plaintiff contends that it is plausible that reasonable consumers would find that the industrial processes used to manufacture these ingredients means they are not minimally processed and "certainly not naturally occurring."  Oppo. ECF No. 10 at 7.  Plaintiff argues that ingredients like these are "manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant[]…sources," rendering them "synthetic" under Congress' definition in 7 U.S.C. § 6502(22).  *Id.*  Plaintiff further argues that the deceptive nature of a business practice under California consumer protection statutes is usually a question of fact that is not appropriate for decision on a motion to dismiss.  *Id.* at 4.

In the Complaint, Plaintiff raises a UCL fraud claim under the heading "Fraudulent," asserting that "Chobani's 'Only Natural Ingredients' labeling claim for the Products is

likely to deceive reasonable consumers and the public." Compl. ¶¶ 71-72. Therefore, the UCL claims must meet the heightened pleading standards of Rule 9. *See Kearns*, 597 F.3d at 1125.

The Court finds that Plaintiff has sufficiently alleged under Rule 9(b) that the Products contain stevia leaf extract and monk fruit extract that have undergone transformative manufacturing processes that would cause a reasonable consumer to consider them not "natural." The allegations in the Complaint outline how stevia root and monk fruit begin as natural foods, but the manufacturing processes required to produce the "concentrated powder" or "final powder product" used in the Products does not comport with a reasonable consumer's understanding of what constitutes a "natural" ingredient. Compl. ¶ 27, 30.

The Complaint asserts that the ingredients are "artificial" because stevia leaf extract is derived from the stevia plant, but an "industrial process of extracting steviol glycoside from the stevia plant" results in an artificial sweetener. Compl. ECF No. 1-2 ¶¶ 16, 17. To support this assertion, Plaintiff describes in detail the eleven-step manufacturing process required to transform stevia leaves into stevia leaf extract. Compl. ECF No. 1-2 ¶¶ 17-26. Plaintiff explains that one step of the process requires "liquid extract [to be] clarified by either chemical- or electro-coagulation and filtering in an industrial tank." Compl ECF No. 1-2 ¶ 18. Another step requires "a water-immiscible solvent, such as pure ethanol," to pass through a column and "take up steviol glycoside from resin." *Id.* ¶ 22. The final step consists of "hot, decolorized alcoholic TSG syrup [being] spray dried in industrial equipment." *Id.* ¶¶ 25, 26.

Similarly, the Complaint states that "Monk Fruit Extract is highly processed in order to get it from the whole small melon to the concentrated powder or liquid used in foods." Compl. ECF No. 1-2 ¶ 27. The process by which monk fruit becomes monk fruit extract is outlined in the Complaint as follows:

> Mature fruits are harvested, sorted, washed, then crushed to extract the juice, which is filtered to remove solid particles. The filtered juice is then heated to

deactivate its enzymes. Next, reverse osmosis is used to remove water molecules, leaving behind a more concentrated juice, which is further purified through chromatography techniques such as ion exchange and size-exclusion chromatography. These processes separate compounds based on their individual properties. Activated carbon and/or adsorption/separation polymer resin columns are then used to further purify the concentrate by absorbing glycosides. The desired components are then washed from the resin with ethanol, which is subsequently removed by evaporation. If a powder is desired, the resulting liquid is then spray-dried to create the final powder product.

Compl. ¶¶ 28-30, ECF No. 1-2. Plaintiff asserts that the resulting product is an "artificial" ingredient. *Id.* ¶¶ 27, 28-31.

The Complaint identifies Defendant as the actor who caused the alleged harm, illustrates in detail how monk fruit extract is manufactured, and shows why adding the ingredients to Products marketed as including "Only Natural Ingredients" violates the UCL and FAL. It further alleges that Plaintiff purchased the Products in various retail establishments, including Ralph's and Vons supermarkets, and online through Amazon Fresh. Compl. ¶46. In so alleging, Plaintiff has given Defendant "adequate notice to allow them to defend the charge" thereby protecting "those whose reputation would be harmed as a result of being subject to fraud charges" and prohibiting plaintiffs "from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (internal citations omitted).

Defendant's reliance on *Vitort*, is unavailing. There, the plaintiff asserted that a "Just Fruit" label was deceptive because the fruit spreads contained additional ingredients that appeared in a form not found in nature and were therefore not "fruit." *Vitort,* at *1. The *Vitort* court found that the "Just Fruit" label was not "objectively false" because the product contained ingredients derived from fruit unlike "many spreadable fruit products contain non-fruit ingredients, such as flavor extracts, non-fruit sugar, food coloring, or animal gelatin." *Id.* Importantly, the "Just Fruit" label described a product that contained ingredients which were of like kind (fruit syrup, apple juice concentrate), derived only from "fruit," and therefore not likely to mislead a reasonable consumer. *Id*. at *7.

In contrast, Plaintiff here has pled facts showing that the Products contain manufactured ingredients originally derived from plants but that a reasonable consumer would not expect to be included in yogurt that assertedly contains "Only Natural Ingredients." The ingredients here are more akin to the "non-fruit ingredients" described by the *Vitort* court, which are more likely to mislead a reasonable consumer. *See Lavie,* 105 Cal.App. 4th at 508. ("'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.")

Although Defendant contends that the ingredients can be "minimally processed" under U.S. Department of Agriculture guidance for "natural" labels, the USDA guidance upon which Defendant relies refers to "meats and poultry products," not fruit or vegetable extracts. USDA Food Standards and Labeling Policy Book.[3] Therefore, the guidance misses the mark. Moreover, whether the described processes are perceived as more than "minimal" by the reasonable consumer is a question better suited for a later stage in the proceedings, after discovery has been completed. *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 914 (E.D. Cal. 2020) ("questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.")

Accepting the factual allegations in the Complaint as true, the Court finds that Plaintiff has "nudged [her] claims from conceivable to plausible" by alleging with

---

[3] "The term 'natural' may be used on labeling for meat products and poultry products, provided the applicant for such labeling demonstrates that: (1) the product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed. Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices." USDA Food Standards and Labeling Policy Book, https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf.

particularity that the Products contain stevia root extract and monk fruit extract, and these ingredients are "artificial" because they undergo the processes detailed in the Complaint. See *Twombly*, 550 U.S. at 570. The claims are more than speculative because Plaintiff has sufficiently connected the manufactured ingredients to the Products for purposes of the present motion. Additionally, whether Plaintiff has sufficiently pled that a reasonable consumer would consider the ingredients to be "artificial" is better suited for later in the case. Therefore, this is not the "rare" category of cases fit for dismissal at this stage. *Williams*, 552 F.3d at 938 ("whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer").

### 2. *Manufactured Citric Acid*

Defendant seeks dismissal of Plaintiff's claims concerning manufactured citric acid ("MCA") on multiple grounds. First, Defendant claims that Plaintiff fails to plausibly allege that citric acid is an artificial ingredient. Mot. ECF No. 9 at 9. Next, Defendant argues that Plaintiff does not draw a connection between the manufacturing process she describes and the actual practice used by Defendant, citing *Valencia v. Snapple Beverage Corp*, No. 23-cv-1399, 2024 WL 1158476, at * 5 (S.D.N.Y Mar. 18, 2024) in support. *Id*. at 10. Finally, even if Plaintiff makes this connection, Defendant argues "federal law recognizes in numerous sources that microbial fermentation of carbohydrates – the process that Plaintiff alleges – is natural." *Id.*

Plaintiff responds that she has clearly alleged in the Complaint that the citric acid used in the Products is MCA, which is "industrially manufactured, and not the kind found in nature." Oppo. ECF No. 10 at 10. Plaintiff contends that the MCA used in the Products is "synthetic" because it "is made with at least two synthetic components" incorporated into the Products. *Id.* at 12. Plaintiff claims its position is supported by FDA letters warning manufacturers that the use of the term "natural" on products containing citric acid was "inappropriate" because the citric acid was considered "artificial" or "synthetic" pursuant to FDA guidance. Mot. at 12. According to Plaintiff, courts in California and New York have determined that products advertised as "All Natural" were misleading and

false where they contained citric acid extracted from *Aspergillus niger,* just as the MCA here, citing *Mason v. Reed's Inc*., 515 F.Supp.3d 135, 143-44 (S.D.N.Y. 2021) and *Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103, 1133, 1147 (S.D. Cal. 2021).  *Id.*

To determine whether Plaintiff has sufficiently pled this cause of action, the Court looks to the claim as pled in the Complaint:

> While citric acid can be both a natural and a synthetic ingredient, depending on how it is sourced or produced, the citric acid utilized by Chobani in the Yogurts was industrially manufactured, and not the kind found in nature. That is, up until recently, each Yogurt contained MCA, an industrial chemical derived, not from fruit or vegetables, but from the fermentation of crude sugars (e.g., molasses and corn starch) by the mold, *Aspergillus niger*."

Compl. ECF No. 1-2 ¶ 39.  The allegations further contend that "[t]he manufacturing process for food-grade citric acid, like in the Products, utilizes synthetic industrial chemicals to render the ingredient from mold (*Aspergillus nige*r), including n-octyl alcohol and isoparaffinic petroleum hydrocarbons," citing 21 C.F.R. § 173.280(a), which describes the "[s]olvent extraction process for citric acid."  Compl. ¶ 40.  Even with good manufacturing processes, Plaintiff asserts that some trace synthetic chemicals remain in the MCA, which ends up in the Products.  *Id*.

Here, the Court finds that Plaintiff has sufficiently alleged that Defendant used industrially manufactured MCA in some Products, resulting in the "Only Natural Ingredients" label being misleading to consumers.  *Cahill v. Liberty Mutual Inc. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.")  The FDA warning letters cited by Plaintiff, and of which the Court has taken judicial notice, state that the use of the term "all natural" on products containing citric acid is "inappropriate" because the FDA "policy regarding the use of 'natural' means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food."  Oak Tree Farm Dairy Letter, Exhibit 1, ECF No. 11.  Defendant claims that the FDA letters are unavailing because they concern an "All Natural" label, which is

substantively different than an "Only Natural Ingredients" label. The Court disagrees. If the Products contain only natural ingredients, it follows that the result is an all-natural finished product.

Other district courts have determined that, under certain circumstances, a product should not be labeled "natural" if the product contains citric acid. For instance, in *Stewart v. Kodiak Cakes*, defendants moved to dismiss plaintiffs' claim that Defendant misrepresented the natural labeling "because its products contain 'non-natural, synthetic and/or artificial substances,' such as monocalcium phosphate, sodium bicarbonate, sodium acid pyrophosphate ("SAPP"), *citric acid*, and xanthan gum." 537 F.Supp.3d at 1133 (emphasis added). The court found that plaintiffs met the heightened pleading standard of Rule 9(b) because the claims identified that Defendant was "who" committed the wrong, the deceptive marketing statements were "what" caused the harm, the class period was "when" the violations occurred, the marketing and advertising in various media forms was the "where," and plaintiff demonstrated "how" the misrepresentation was associated with each product. *Id.* at 1134. The court found that the claims "provided adequate notice to Defendants in a manner that shows the suit is not merely a fishing expedition for unknown wrongs" and did not impose baseless litigation upon the Court, parties, or society. *Id*.

Just as in *Stewart*, Plaintiff here has satisfied the heightened standard of Rule 9 regarding the MCA claim by alleging the 'who, what, when, where, and how' of the charged misconduct. *Kearns*, 567 F.3d at 1124. The Complaint identifies Defendant as the actor who committed the alleged violations; the "Only Natural Ingredients" label caused the harm; Plaintiff purchased the Products at Ralphs, Vons, and Amazon Fresh; and Defendants allegedly violated the UCL and FAL by including MCA in a product represented to include "Only Natural Ingredients." Moreover, the allegations provide Defendant with sufficient notice to defend the charge by asserting that MCA is not a "natural" ingredient and that reasonable consumers, including Plaintiff, are likely to be deceived by the "All Natural Ingredients" label, thereby serving the purpose of Rule 9.

Defendant's reliance on *Valencia v. Snapple*, a case from the Southern District of New York, is unavailing. There, the plaintiff made only generalized statements about the citric acid that the court found were not enough to sufficiently allege that the citric acid used in the subject products was industrially produced. 2024 WL 1158746 * 5. Here, Plaintiff contends that the "citric acid utilized by Chobani in the [Products] was industrially manufactured," linking the two together. Compl. ¶ 39 ECF No. 1-2. Similarly, *Tarzian v. Kraft Heinz Foods, Co*., No. 18-cv-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) is unpersuasive because the district court found that plaintiff had not sufficiently linked the "allegedly artificial citric acid to the actual citric acid used" in the products, unlike Plaintiff's Complaint here.

In addition, Defendant's contention that the citric acid used in the Products is natural because it was produced using fermentation, a natural biological process, is a question more suited for determination after additional evidence is obtained through discovery. *See Fried v. Snapple,* 24-cv-653-DMS-DDL, 753 F.Supp.3d 1145, 1153 (S.D. Cal. Oct. 11, 2024) (finding that defendant's claim that "MCA is natural because it 'can be derived from natural sources and manufactured using natural processes'. . .is more suitable for evaluation after more evidence comes to light in discovery"). In sum, Plaintiff has sufficiently pled that the inclusion of stevia extract, monk fruit extract, and MCA in products labeled "Only Natural Ingredients" is likely to deceive a reasonable consumer under the UCL and FAL. Therefore, Defendant's motion to dismiss is DENIED on these claims.

### 3. Coloring Agents from Vegetable Juice Concentrate

Defendant argues that Plaintiff has not shown how consumers are deceived by the existence of "vegetable juice concentrate (for coloring)" in Products labeled as containing "Only Natural Ingredients." Mot. at 16, ECF No. 9. According to Defendant, Plaintiff's reliance on a non-binding opinion of the FDA to argue that consumer deception can be presumed is insufficient to support her claim because courts have found reliance on FDA guidance about added colors irrelevant when considering consumer expectations. *Id.* at 17. Instead, the qualified "Only Natural Ingredients" representation can only create

expectations as to the source of the individual ingredients, which is not the same as "All Natural" claims contemplated by the FDA opinion that refer to products as a whole. *Id.* at 16-17.

Plaintiff responds that her reliance on FDA guidance is sufficient to support the claims because the purpose of the guidance is to codify the understanding that "natural claims" are "erroneously interpreted by reasonable consumers to mean the color is a naturally-occurring constituent in the food." Oppo. at 16. Therefore, consumer deception can be presumed. In addition, Plaintiff contends that the Court should find that the question whether consumers were misled by Defendant's practice is a question of fact not suitable for resolution on the present motion to dismiss. *Id*.

In the Complaint, Plaintiff alleges that Defendant's use of vegetable juice coloring to artificially color most flavors of the Products is false and misleading in light of guidance provided by the FDA that limits the use of the word "natural" on packaging to products that do not contain any ingredient that is artificial or synthetic, including "color additives regardless of source." Compl. ¶¶ 32-37. However, the Ninth Circuit has not determined whether FDA statements are relevant in analyzing claims based on deceptive marketing, and there is no consensus among district courts regarding whether reliance on FDA statements alone is sufficient. Some district courts have held that FDA guidance "alone is insufficient to show that 'members of the public are likely to be deceived.'" *See Fried*, 753 F.Supp.3d at 1151; *Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *6 (S.D. Cal. Mar. 17, 2023) ("[a]llegations a product's label violates an FDA regulation can't form the basis of a deceptive labeling claim under the reasonable consumer test.") In contrast, another court has noted that "[t]he FDA's 2009 industry guidance statement is relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer[.]" *Ivie v. Kraft Foods Glob. Inc.*, 2013 WL 685372, at *12 (N.D. Cal. Feb. 5, 2013).

Here, Plaintiff does not assert any facts demonstrating that reasonable consumers relied on the representation, and instead, only cites FDA guidance. See Compl. ¶¶ 32-37.

Although Plaintiff argues that one of the underlying reasons for the enactment of the FDA guidance regarding terms like "natural color" is because reasonable consumers erroneously interpret that to mean the color is a naturally occurring constituent in the food, this is a conclusory assertion supported only by a reference to an article called See a Sip: A Basic Guide to Color Additives, Flavorman (June 16, 2021), which is insufficient to support the claim.  See In re Gilead Scis. Secs. Litig., 536 F.3d at 1055 (courts are not required to accept "conclusory allegations, unwarranted deductions of fact, or unreasonable inferences" as true.)

The Court finds the reasoning in Snapple persuasive.  In that case, plaintiff asserted that the addition of fruit and vegetable juice concentrates to defendant's juices for color resulted in misleading labeling because terms like "natural color" could be misinterpreted by reasonable consumers who could believe that this meant the color is naturally occurring in the food.  Snapple, 753 F.Supp.3d at 1151.  The Court held that "it is not plausible that a reasonable consumer would think that adding a natural product to a natural product renders the latter not natural," in part, because plaintiff relied only on an FDA policy that defined the term "natural."  Id. (internal citations omitted).  The product ingredient list clarified any potential misunderstanding a reasonable consumer may have by noting "that vegetable and fruit concentrates were added for color and that the color is not 'a naturally-occurring constituent in the food.' "  Id. at 1152 (emphasis in original).

Here, as in Snapple, Plaintiff relies solely on FDA guidance. Therefore, the Court looks to the ingredients listed on the back label.  The Ninth Circuit has clarified that "qualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead.' "  Moore, 966 F.3d at 1017 (quoting Brady v. Bayer Corp., 26 Cal.App.5th 1156, 1167 (2018)).  "[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label."  McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1098 (9th Cir. 2023).

1   In the present case, the front label "Only Natural Ingredients" is not unambiguously

2   deceptive.  Therefore, the Court considers the Products front and back labels as shown in

3   the Complaint:



The back ingredient label clearly states that the product includes "vegetable juice

concentrate (for color)."  Therefore, a reasonable consumer is on notice about the source

of the color and is not likely to be deceived by Defendant's "Only Natural Ingredients"

labeling on the Products.  *See Fried*, 753 F.Supp.3d at 1151.

For these reasons, the Court finds that Plaintiff has not sufficiently alleged that

Defendant's use of vegetable juice coloring to artificially color most flavors of the Products

is false and misleading, and GRANTS Defendant's motion on this claim.

### B. Substantiation Claim

Defendant argues that Plaintiff's claims must be dismissed because she has not

substantiated her assertion that the "Only Natural Ingredients" representation is false or

misleading with any studies or testing, or any facts that connect the alleged manufacturing

processes to the actual manufacturing processes used by Chobani's suppliers. Mot. ECF No. 9 at 19. Plaintiff counters that she is not attempting to bring a "lack of substantiation" claim under California's consumer protection statutes, but instead, is alleging that she was misled and suffered injury in the form of overpayment based on Defendant's misrepresentations on the Product labels. Oppo. ECF No. 10 at 17.

Under California Business and Professions Code Section 17508, the "Attorney General or other prosecuting authorities" may "require advertisers to substantiate their advertising claims." *Nat'l Council Against Health Fraud v. King Bio Pharmaceuticals, Inc.*, 107 Cal.App.4th 1336, 1345 (2nd Dist. Ct. App. 2003). There is no private cause of action under the UCL to enforce the substantiation provisions of California's unfair competition or consumer protection laws. *See Kwan v. SanMedica Int*., 854 F.3d 1088, 1096 (9th Cir. 2017) ("courts have precluded private citizens from bringing actions that allege that the challenged advertising language lacked proper scientific substantiation.") However, Plaintiff does not assert that the "Only Natural Ingredients" claims are not properly substantiated. Moreover, despite Defendant's argument to the contrary, Plaintiff provides factual support for her allegations in the Complaint that the ingredients are not natural and inconsistent with the "Only Natural Ingredients" label. For these reasons, Defendant's motion is DENIED on this ground.

### C. Standing

Defendant argues that the complaint should be dismissed because Plaintiff lacks standing. First, according to Defendant, Plaintiff fails to establish any concrete, economic injury not based on the speculative risk that an ingredient could potentially be artificial. Mot. at 20, ECF No. 9. Defendant also contends that Plaintiff does not sufficiently allege she suffered an economic injury for the premium price she paid, citing *Horti v. Nestle HealthCare Nutrition, Inc.,* No. 21-cv-09812, 2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022). Mot. at 20. Additionally, Defendant states that Plaintiff lacks Article III standing to seek injunctive relief because (1) she fails to allege that she intends to buy the Products again and (2) there is no imminent harm as to the addition of citric acid because the

Complaint concedes it is no longer listed in the Products.  *Id.* at 21-22.

Plaintiff counters that she has standing because she has alleged that she and putative class members overpaid for the Products because they relied on the "Only Natural Ingredients" misrepresentation when choosing to purchase them.  Oppo. at 19.  Plaintiff concedes that that she has not alleged sufficient facts to entitle her to injunctive relief in federal court, but notes that none of her causes of action specifically allege entitlement to injunctive relief, making Defendant's argument misplaced.  *Id.* at 17.

Under Article III, federal courts have jurisdiction over "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  To establish standing, a plaintiff must first have suffered an "injury in fact" which is "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Id*. (citations omitted).  Second, the injury must be "fairly traceable to the challenged action of the defendant ...." *Id*. at 560 (citations and alterations omitted).  Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id*.  (citations omitted).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Moreover, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 185 (2000)).

"Overpayment is a viable theory of economic injury," and "a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); s*ee also Davidson*, 889 F.3d at 965 ("[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("In a false advertising case, plaintiffs meet th[e economic injury-in-fact] requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they

1    otherwise would not have done so." (internal quotation omitted)).

2        Here, Plaintiff has standing because she alleged in the Complaint that she relied on

3    the "Only Natural Ingredients" representation on the label and would not have been willing

4    to pay as much as she did if she knew the Products contained manufactured or unnatural

5    ingredients. *See McGee,* 982 F.3d at 706. The Complaint further states that "the [Products]

6    cost more than similar products without misleading labeling," that the statements

7    "increase[d] the size of [Chobani's] market," and that "the [Products] were worth less"

8    than they cost. Compl. ¶¶ 51–54.

9        Defendant's reliance on *Horti* is unpersuasive. The plaintiffs in *Horti* alleged they

10   paid a premium price for a drink called BOOST Glucose Control based on label

11   representations that it would help "manage blood sugar", and that it was specifically

12   "designed for people with diabetes." *Horti,* 2022 WL 2441560, *1 (N.D. Cal. July 5,

13   2022). The Court found the plaintiffs failed to allege a cognizable injury because they did

14   not state "whether they have diabetes" and whether they suffered any injury as a result of

15   consuming the products, but only claimed that they paid a premium price for a product that

16   did not work as promised. *Id.* at *8. Because their "allegations lack[ed] any detail about

17   the prices they paid or the differences between Boost Glucose Control products and non-

18   premium products" the Court held they did not have standing. *Id.*

19       In the present case, the Complaint asserts that Plaintiff was "looking for foods that

20   contain only natural ingredients" because "she considers such foods to be healthier

21   alternatives than foods made with and containing artificial and synthetic ingredients."

22   Compl. ¶ 47. The Complaint asserts that there is a substantive difference between yogurt

23   that contains "artificial or synthetic ingredients" and yogurts that contain only natural

24   ingredients, and this difference is what compelled Plaintiff to pay a higher price in reliance

25   on the misleading and deceptive "Only Natural Ingredients" label. Compl. ¶¶ 47, 52.

26   Accordingly, Plaintiff has alleged an injury in fact sufficient to confer standing because

27   she asserts that she overpaid for the Products based on her reliance on a false

28   representation. For the foregoing reasons, Defendant's motion to dismiss for lack of

standing is DENIED.  With regard to injunctive relief, Plaintiff concedes that she does not allege sufficient facts to entitle her to injunctive relief in federal court, therefore the Court DENIES Defendant's motion as MOOT on this ground.

## V.    Conclusion and Order

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss regarding stevia leaf extract, monk fruit extract and Manufactured Citric Acid; **GRANTS** Defendant's motion to dismiss Plaintiff's claims regarding artificial coloring; **DENIES** Defendant's motion to dismiss on the basis of a substantiation claim; and **DENIES** Defendant's motion to dismiss finding Plaintiff has asserted an injury-in-fact based on overpayment; and **DENIES AS MOOT** Defendant's motion to dismiss for failure to assert standing for injunctive relief. Lastly, the Court **GRANTS** both parties' Motions for Judicial Notice.

**IT IS SO ORDERED**

Dated: July 11, 2025

Honorable Benjamin J. Cheeks
United States District Judge

24cv1418 BJC (KSC)